**Raymond F. BRUSSEAU, Plaintiff,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, a Texas corporation, and General Motors Corporation, a Michigan corporation, Defendants.**

Civ. No. 88–CV–71873–DT.

United States District Court,
E.D. Michigan, S.D.

June 22, 1988.
On Motion to Tax Costs Aug. 31, 1988.

Anthony A. Haisch, Haisch & Associates, Detroit, Mich., for plaintiff.

Terrence A. Page, Clark Hardy Louis Pollard & Page, Birmingham, Mich., for Electronic Data Systems Corp.

M. Beth Sax, Gen. Motors Legal Dept., Detroit, Mich., for defendant.

## AMENDED MEMORANDUM AND ORDER OF REMAND

COHN, District Judge.

### I.

### A.

This is a wrongful discharge case filed on April 8, 1988 in the Macomb County, Michigan Circuit Court. Plaintiff Raymond Brusseau was a long-time employee of defendant General Motors Corporation (GM). In January 1985, after GM's acquisition of defendant Electronic Data Systems Corporation (EDS) as a wholly-owned subsidiary, plaintiff was transferred to EDS; he was discharged from EDS two years later, allegedly for poor work performance. In his complaint plaintiff alleges breach of employment contract, negligent contractual performance and fraudulent misrepresentation against EDS, and fraudulent misrepresentation against GM.

On May 2, 1988 EDS removed the case to this Court on the basis of diversity of citizenship. GM concurred in the removal petition. Plaintiff is a Michigan citizen and EDS is a foreign corporation; GM, however, has its principal place of business in Michigan and therefore is not diverse to plaintiff. 28 U.S.C. § 1332(c). In the removal petition EDS stated that GM was a "sham" defendant, fraudulently joined in order to destroy removal jurisdiction since in connection with plaintiff's transfer to EDS, he signed an EDS Restricted Stock Agreement that contained a provision specifically releasing GM from liability for "all claims, demands and causes of action, known or unknown ... based upon or relating to [the] transfer to [EDS]."

### B.

Before the Court is plaintiff's motion to remand. He contends that the complaint states a cause of action against GM and that the EDS Restricted Stock Agreement is not a valid release of all of his claims against GM. Plaintiff essentially argues that there was either fraud in the execution, fraud in the inducement or duress in the execution of the release sufficient to avoid its bar. Plaintiff thus concludes that GM is not a "sham" defendant and diversity of citizenship is lacking.

EDS responds that plaintiff fraudulently joined GM to defeat jurisdiction in light of the fact that there is no possibility plaintiff can establish a valid cause of action against GM due to the release contained in the EDS Restricted Stock Agreement. EDS contends that plaintiff's failure to tender back the consideration received in exchange for the release dooms any hope he has of avoiding its bar. GM responds similarly. Plaintiff has replied.

EDS and GM have also filed supplemental briefs. GM has informed the Court that the day after removal, plaintiff filed an amended complaint which contains two additional claims against GM, one of which allegedly states that plaintiff has been "wrongfully deprived of continued employment and/or GM separation benefits." GM contends that this latter claim is preempted by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* and therefore argues that the amended complaint, as well as plaintiff's deposition testimony, indicate that a federal question now also exists to support removal jurisdiction. GM next argues that plaintiff's deposition testimony also provides further support for its claim that plaintiff cannot possibly establish a cause of action against GM because of the release. EDS's supplemental brief is to the same effect. Plaintiff has responded to GM's supplemental brief.

For the reasons stated on the record at the hearing held on June 13, 1988 and those which follow, the motion to remand is

GRANTED, and this case is REMANDED to the Macomb County Circuit Court.

## II.

### A.

Attached to the removal petition as Exhibit A is a copy of the complaint and as Exhibit B, a copy of the EDS Restricted Stock Agreement. Plaintiff does not dispute that he signed the agreement. In paragraph 6, the agreement recites:

*Buyer's Release.* In consideration of the grant and sale of shares of Class E Stock pursuant to this Agreement, Buyer hereby releases and forever discharges GM and [EDS], their officers, directors and employees from all claims, demand and causes of action, known or unknown, which Buyer may have based upon or relating to his transfer to [EDS], including any claim, demand or cause of action arising under any state or federal law or regulation relating to employment and any claims for breach of employment contract, either express or implied. Buyer further agrees not to institute any proceeding, suit, action at law or in equity against GM, [EDS] or their officers, directors, agents, employees, or stockholders, based on any of the matters covered by the release set forth above.

Plaintiff apparently also does not dispute that in the absence of his ability to avoid the release on equitable grounds, it applies to bar his present claim against GM. While plaintiff argues that the release is invalid for lack of consideration, plaintiff does not dispute that he accepted the consideration given in exchange for the release, i.e., continued employment with EDS and some stock. In his affidavit attached to the motion to remand, plaintiff acknowledges that he retained 242 shares of GM Class E Common Stock received pursuant to the EDS Restricted Stock Agreement after his discharge from EDS (apparently worth approximately $10,000, not an insignificant sum).

Plaintiff also details in his affidavit the events surrounding his signing of the EDS Restricted Stock Agreement at a meeting with an EDS employee. *Inter alia,* plaintiff says he was given only 5–10 minutes to read the agreement, which did not allow him sufficient time to read it in its entirety, and told that he must sign it at that time or lose the opportunity to participate in the stock plan. Plaintiff says he was also told that he could not take a copy of the agreement to review with an attorney before signing it. Plaintiff further says that the EDS employee engaged in a course of conduct which was generally characterized as intimidating, and led plaintiff to believe that his signature on the agreement was necessary solely for the purpose of consummating the stock transaction.

### B.

#### 1.

It is well-settled that in questions of federal subject matter jurisdiction, the burden of proof is on the party asserting the existence of jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942); 13 C. Wright, A. Miller & A. Cooper, *Fed.Prac. & Proced.* § 3522. The federal courts have required that a party relying on fraudulent joinder plead with particularity, and support by clear and convincing evidence, that the joinder of a nondiverse party was done with fraudulent intent to prevent removal. *Bucksnort Oil Co., Inc. v. Nat'l Convenience Stores, Inc.,* 585 F.Supp. 883, 885–86 (M.D.Tenn.1984). This is a heavy burden of pleading, production and persuasion, *id.* at 886, which in this case is on EDS and GM.

#### 2.

Whether a defendant had a right to remove is determined from the allegations of the complaint *at the time of removal. C & O Ry. Co. v. Cockrell,* 232 U.S. 146, 152, 34 S.Ct. 278, 280, 58 L.Ed. 544 (1914); *Holloway v. Pacific Indem. Co., Inc.,* 422 F.Supp. 1036, 1037 (E.D.Mich. 1976). To demonstrate the existence of fraudulent joinder, the removing party must show that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the nondiverse defendant in state court. *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549

(5th Cir.1981); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983); *Bucksnort Oil, supra,* 585 F.Supp. at 886.

■ When fraudulent joinder is alleged based on a valid affirmative defense, the federal courts may look beyond the pleadings to determine if the joinder of the nondiverse defendant, though fair on its face, is a "sham" to prevent removal. IA J. Moore, *Moore's Fed.Prac.* par. 0.161[2]. For example, in *Green v. Amerada Hess,* the court of appeals looked beyond the allegations of the plaintiff's complaint to determine whether res judicata or collateral estoppel applied to bar plaintiff's claim against the nondiverse defendant. 707 F.2d at 205.

### 3.

■ In reviewing the evidence of record to determine whether removal was proper, the Court should not engage in a full, in-depth review of the ultimate issues of substantive liability. *B. Inc., supra,* 663 F.2d at 551; *Bucksnort Oil, supra,* 585 F.Supp. at 886. As the Court of Appeals for the Fifth Circuit has so aptly stated:

> When confronted with allegations of fraudulent joinder, the trial court's vision must be synoptic rather than microscopic. The court must take care not to focus solely upon the factual minutiae of the individual case and thereby lose sight of the important questions of federal jurisdiction presented when the propriety of removal is contested.

> . . . .

> The "fraudulent joinder" issue must be seen by the trial courts as presenting a discrete threshold question. A trial court should not have to witness an entire epic drama before the necessary preclude has been acted out fully and the critics' verdict rendered. [The trial court should not hold] what amount[s] to a plenary trial on the merits until it ha[s] first been established that the court would take jurisdiction over the matter. Only if it could [be] shown *as a matter of law* that there was no possibility of there being a valid claim stated against

the in-state [defendant] should the court [deny] the plaintiff's motion for remand. *B., Inc., supra,* 663 F.2d at 554.

### 4.

On the substantive issues the parties both utilize Michigan law in their papers, and they apparently do not dispute that Michigan law will apply (despite the choice of Texas law in the EDS Restricted Stock Agreement).

■ Under Michigan law, in order for a release to be valid, it must be "fairly and knowingly made." *Denton v. Utley,* 350 Mich. 332, 342, 86 N.W.2d 537 (1957). Avoidance of a release is a purely equitable matter. *Farwell v. Neal,* 40 Mich.App. 351, 198 N.W.2d 801 (1972). Tender of the consideration received in exchange for the release within a reasonable amount of time after any fraud is discovered is generally a prerequisite to commencement of a suit covered by the subject matter of the release. *Randall v. Railway Co.,* 215 Mich. 413, 422–424, 184 N.W. 435 (1921); *Leahan v. Stroh Brewery Co.,* 420 Mich. 108, 112–13, 359 N.W.2d 524 (1984); *Paul v. Rotman,* 50 Mich.App. 459, 463, 213 N.W.2d 588 (1973); *Davis v. Bronson Hosp.,* 159 Mich.App. 251, 253, 406 N.W.2d 201 (1986). Such tender is not a requirement, however, when the release is challenged on the ground of "fraud in the execution." *See, Paul, supra.*

### III.

#### A.

■ The Court concludes that the motion to remand should be granted. While it appears that plaintiff *may* be precluded under Michigan law from avoiding the release on the theories of overreaching (duress) or fraud in the inducement to execute the agreement because he did not, and has not yet, tendered back the consideration received to EDS or GM, fraud in the execution remains as a possible, though probably unsuccessful, theory for avoidance.

The Court notes that numerous cases have been brought against GM and/or EDS similar to the one at issue here, and most

of·the plaintiffs have been unsuccessful in avoiding the bar of the release. *See, e.g., Fryer v. General Motors Corp.*, Civil No. 86–CV–72451–DT (E.D.Mich. Aug. 12, 1987); *Miller v. General Motors Corp.*, Civil No. 85–CV–74127–DT (E.D.Mich. June 4, 1986), *aff'd mem.*, 845 F.2d 326 (6th Cir.1988) (Contie, J., dissenting in an unpublished opinion). However, the Court also notes that each case was decided on its particular facts and plaintiff has argued that this case should be distinguished from those cases on its facts.

The Court concludes that plaintiff is entitled to his day in court, and that day must necessarily come in state court.

### B.

The Court does not reach the question of federal question jurisdiction because: (1) removal jurisdiction, as explained above, is determined by the allegations of the complaint as it existed at the time of removal, and the amended complaint was filed in state court *after* removal; and (2) the amended complaint has not been filed or docketed in this Court, an omission the Court cannot overlook.

### C.

What EDS and GM have overlooked is the caution expressed by Professor Zechariah Chafee in his Thomas M. Cooley Lectures given at the University of Michigan Law School in 1949:

The boundary between judicial power and nullity should ..., if possible, be a bright line, so that very little thought is required to enable judges to keep inside it. If, on the contrary, that boundary is vague and obscure, raising "questions of penumbra, of shadowy marches," two bad consequences will ensue similar to those on the traffic artery. Sometimes judges will be misled into trying lengthy cases and laboriously reaching decisions which do not bind anybody. At other times, judges will be so fearful of exceeding the uncertain limits of their powers that they will cautiously throw out disputes which they really have capacity to settle, and thus justice which badly needs to be done will be completely denied. Furthermore, an enormous amount of expensive legal ability will be used up on jurisdictional issues when it could be much better spent upon elucidating the merits of cases. In short, a trial judge ought to be able to tell easily and fast what belongs in his court and what has no business there.

2. Chafee, Jr., *Some Problems of Equity* 312 (published in 1950 by the U. of Mich. Law School).

SO ORDERED.

### ON MOTION TO TAX COSTS

On June 15, 1988, the Court remanded this case to the Macomb County Circuit Court for the reasons stated in the Court's Amended Memorandum And Order of Remand. Now before the Court is plaintiff's motion styled *Plaintiff's Motion To Tax Costs And Attorney Fees Against Defendants* grounded on 28 U.S.C. § 1447(c) and Fed.R.Civ.P. 11. The request totals $6,086.25 for the time of two attorneys. The motion is DENIED.

Plaintiff's complaint contained four counts. Count I alleged breach of an implied contract of employment on the authority of *Touissant v. Blue Cross Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). Count II alleged negligent evaluation, a claim not recognized under the common law of Michigan. *See Haas v. Montgomery Ward & Co.*, 812 F.2d 1015 (6th Cir.1987). Count III is simply a recast of the allegations of Count I. Count IV alleged misrepresentation against the General Motors Corporation. In light of the release plaintiff signed, however, this count barely crossed the threshold of a justiciable claim.

While the Court found that the validity of the release must be adjudicated in state court, it was not unreasonable for defendants to challenge remand. Defendants' counsel obviously felt that they could persuade this Court to reach the merits of the release issue under the guise of a remand proceeding, particularly since like releases had been upheld in a number of prior cases. What counsel failed to appreciate, however, was the seriousness with which this Court

views the limits on the jurisdiction of the federal courts. As Professor Philip Kurland has noted,

> [q]uestions of federal jurisdiction, for many people involve no more than the application of technical formulae created only to confuse the uninitiated. More sophisticated students of government understand that these problems involve fundamental questions of power, and that the existence of democracy depends in no small part upon the allocation of such authority.

Kurland, *Mr. Justice Frankfurter* (1957), *quoted in* Freyer, *Harmony and Dissonance* (1981). Since, however, this respect for state-federal comity is not universally shared, the Court cannot say that it was unreasonable for defendants' counsel to challenge the remand. Reasoning to a wrong conclusion is not sanctionable conduct. Accordingly, plaintiff's motion for attorneys' fees is DENIED.

SO ORDERED.