Jack D. BALL and Shirley A.
Ball, Plaintiffs,

v.

MARTIN MARIETTA MAGNESIA
SPECIALTIES, INC., et al.,
Defendants.

No. L89–10086 CA.

United States District Court,
W.D. Michigan, S.D.

March 6, 1990.

Peter Armstrong, Grand Rapids, Mich.,
for plaintiffs.

William A. Moore, Detroit, Mich., for defendants.

## OPINION ON MOTION FOR RECONSIDERATION

JOSEPH G. SCOVILLE, United States Magistrate.

### Facts

This is an employment case arising under state law. Plaintiffs initiated this action by filing a complaint in the Manistee County Circuit Court. The complaint alleged that plaintiff Jack Ball had been employed as a foreman by defendant Martin Marietta Magnesia Specialties, Inc. (Martin Marietta) from May 26, 1981, through the time of his layoff on March 15, 1989. The complaint charged that the layoff was a pretext for a wrongful termination in violation of an employment contract. Count III of the complaint alleged a state civil rights act claim against Martin Marietta and defendant William Sawhill, a plant manager, arising from the failure to recall Ball to an available position in March of 1989, allegedly on account of his age.

Defendants removed the action to this court by removal petition filed on September 26, 1989. The stated ground for removal was diversity of citizenship. 28 U.S.C. §§ 1332, 1441. The petition acknowledged that plaintiffs and defendant Sawhill are not of diverse citizenship, but alleged that Sawhill had been fraudulently joined as a defendant to destroy diversity (Petition, ¶ 7). The petition asserted that Sawhill's presence in the case should therefore be ignored (Id., ¶ 8).

On October 25, 1989, plaintiffs moved to remand the case to state court. 28 U.S.C. § 1447(c). The motion argued that defendant Sawhill was indeed a proper party defendant to Count III, which alleged wrongful failure to rehire Ball in violation of the state civil rights act. Because Sawhill, a nondiverse party, was properly joined, plaintiffs argued the case should be remanded to state court for lack of federal subject-matter jurisdiction.

In response to the remand motion, defendants filed the affidavit of defendants Sawhill and David C. Dressler, Senior Vice-President of Martin Marietta, which set forth some of the facts surrounding Martin Marietta's decisions to terminate Ball and not to recall him. On the termination issue, the Dressler affidavit stated that Ball was released from employment because his job was eliminated for economic reasons (Aff., ¶ 6). Dressler averred that Sawhill took no part in this decision and, in fact, was not made plant manager until the very day that Ball was terminated. Sawhill, therefore, was merely the bearer of bad news to Ball (Id., ¶¶ 10–12). On the issue of Martin Marietta's failure to rehire Ball when a different job became available, the affidavits said only this:

14. Any decision not to offer Mr. Ball any subsequent employment with the Company was a group management decision.

The affidavit did not disclose the date of the decision not to rehire Ball, the reasons or circumstances surrounding that decision, or the members of the "group" involved in the decision.

Chief Judge Hillman referred the remand motion to me for hearing and disposition pursuant to 28 U.S.C. § 636(b)(1)(A) (docket # 7). On December 18, 1989, I conducted a hearing on the motion. On the basis of the record then made, I found that Sawhill could be liable under state law on Ball's failure-to-rehire claim, as Sawhill was plant manager at the time of the challenged conduct. Accordingly, a reasonable basis existed under state law for asserting a civil rights claim against Sawhill for discriminatory failure to rehire Ball. Because Sawhill was not fraudulently joined as a defendant, his presence destroyed complete diversity of citizenship and required a remand for lack of jurisdiction (see Oral Opinion, in Transcript of Hearing, docket # 12). The order of remand provided for an automatic stay of fifteen days to allow an appeal to Chief Judge Hillman (docket # 9).

Defendants filed a timely appeal (docket # 10). During the pendency of the appeal, defendants also filed a motion asking that I reconsider the decision to remand the case.

The motion for reconsideration argued that I had mistakenly read the Dressler affidavit as indicating that Sawhill was plant manager when the decision was made not to rehire Ball (Motion, ¶¶ 5–6). In support of this argument, defendants submitted a second affidavit of David Dressler, indicating that the decision never to rehire Ball was made at the same time that Ball was terminated (Aff., ¶¶ 1–3). Therefore, even though Sawhill was plant manager at the time that a younger person was hired instead of recalling Ball, that decision had already been made, and Sawhill was again merely implementing a decision made by others (*Id.*, ¶ 4). On this basis, defendants have reasserted their argument that the claim against Sawhill is so insubstantial that his presence should be ignored for purposes of determining diversity of citizenship.

*Discussion*

I.

■ A threshold question concerns my jurisdiction to reconsider an order that has been appealed to the district judge. The governing statute and court rule are silent on this question. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a).

In the absence of direct authority, I turn to the analogous principles governing appeals from the District Court to the Court of Appeals. The traditional rule is that a timely appeal divests the district court of jurisdiction to reconsider its judgment until the case is remanded by the Court of Appeals. *See Griggs v. Provident Con. Disc. Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 401, 74 L.Ed.2d 225 (1982); 7 *Moore's Federal Practice* ¶ 60.30[2] (1987). For reasons of expediency, however, the Sixth Circuit has recognized an exception to this rule. The court has held that the lower court may entertain a motion for reconsideration filed during the pendency of an appeal; the motion can be denied, but may not be granted without permission from the appellate court. *See First Nat'l Bank of Salem v. Hirsch*, 535 F.2d 343, 345–46 (6th Cir.1976) (per curiam). If the lower court is inclined to grant the motion, remand must first be sought and obtained. 7 *Moore's* at 60–335.

Relying on this authority, I conclude that I have jurisdiction to consider defendants' motion and to certify to Judge Hillman any intent to grant it. I will therefore proceed to a plenary review of the question of remand of the pending case.

II.

A.

Plaintiffs' motion to remand challenges the subject-matter jurisdiction of this court. The federal courts are courts of limited jurisdiction; they have only such jurisdiction as is conferred by Article III of the Constitution and the Acts of Congress. *Gross v. Hougland*, 712 F.2d 1034, 1036 (6th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 684 (1984). The court's jurisdiction over this case is conferred, if at all, by the Removal Act, 28 U.S.C. §§ 1441–1452. The Removal Act allows removal of civil actions "brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. Generally speaking, a suit may be removed to federal court only if it could have been brought there originally. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). The federal district courts have original jurisdiction over diversity cases and cases which "arise under" the federal Constitution or laws. 28 U.S.C. §§ 1331, 1332; *see generally* 1A *Moore's Federal Practice*, ¶ 0.157[5] (1988).

Plaintiffs' claims clearly do not "arise under" federal law. Counts I and II of the complaint allege termination of employment in breach of an express or implied employment agreement, under the theory recognized by the Michigan Supreme Court in *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980). Count III alleges a discriminatory refusal to rehire, allegedly on account of age, in violation of the Michigan Elliot–Larsen Civil Rights Act, *Mich.Comp. Laws* §§ 37.2101–.2803. Counts IV, V, and VI allege common-law tort claims for intentional infliction of emotional distress and

tortious interference with contract, and a derivative claim for loss of consortium. Plaintiffs do not purport to state any federal claims.

The only basis for subject-matter jurisdiction is therefore diversity of citizenship. It has always been the law that complete diversity is required; that is, all plaintiffs must be of different citizenship from all defendants. *See City of Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69–70, 62 S.Ct. 15, 16–17, 86 L.Ed. 47 (1941); *Strawbridge v. Curtiss,* 7 U.S. 267 (3 Cranch), 2 L.Ed. 435 (1806); *SHR, Ltd. Partnership v. Braun,* 888 F.2d 455, 456 (6th Cir.1989). In the present case, plaintiffs are citizens of Michigan, as is defendant Sawhill. His presence therefore destroys diversity jurisdiction, if he is a proper defendant.

### B.

■ Although Congress has specifically forbidden use of devices to create diversity jurisdiction, 28 U.S.C. § 1359, no statute expressly inhibits joinder of parties to defeat federal jurisdiction. The common law, however, has long held that diversity jurisdiction is not defeated by joinder of a defendant who could not conceivably be liable. *See, e.g., Wecker v. National Enameling & Stamping Co.,* 204 U.S. 176, 185–86, 27 S.Ct. 184, 188, 51 L.Ed. 430 (1907). In an early case, the Supreme Court stated the rule as follows:

> [T]his right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.... If in such a case a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly leading to that conclusion.

*Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921). In arguing that the presence of defendant Sawhill should be ignored for jurisdictional purposes, defendants seek to invoke this doctrine of "fraudulent joinder."

The test for fraudulent joinder has been variously stated. Some courts require that the removing party show that there is "absolutely no possibility" that plaintiff will be able to establish a claim against the nondiverse defendant in state court. *See, e.g., Brusseau v. Electrical Data Sys.,* 694 F.Supp. 331, 333 (E.D.Mich.1988); *Delatte v. Zurich Ins. Co.,* 683 F.Supp. 1062, 1064 (E.D.La.1988). The majority of courts, however, hold that to defeat removal the removing party must show that there is no *reasonable* basis for asserting that state law might impose liability on the nondiverse defendant under the facts alleged. *See, e.g., B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 550 (5th Cir.1981); *Kelly v. Drake Beam Morin, Inc.,* 695 F.Supp. 354, 355 (E.D.Mich.1988).

■ Regardless of the standard applied, the courts uniformly impose upon the removing party the burden of showing that the joinder was fraudulent and done solely to defeat removal. *B., Inc. v. Miller Brewing Co.,* 663 F.2d at 549–50; *Kelly,* 695 F.Supp. at 355; *Brusseau,* 694 F.Supp. at 333 (defendant has heavy burden of pleading and persuasion); *see* 14 *Wright and Miller, Federal Practice & Procedure: Civil* § 3641 at 138 (1985). This is in accord with the general rule that the burden of establishing the propriety of removal is on the removing party. *Wilson,* 257 U.S. at 97–98, 42 S.Ct. at 37; *Her Majesty The Queen v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989). The burden is therefore on defendants to show that no reasonable basis exists for asserting a claim against defendant Sawhill.

### C.

■ The record at the time of the remand hearing negated the possibility of holding Sawhill liable on Counts I and II, which challenge the initial decision to release Ball from employment on May 15, 1989. The defense affidavits alleged that Ball's position was eliminated for economic reasons. They established that Sawhill assumed the plant manager position only hours before Ball was laid off and that Sawhill was not involved in the decision to

place Ball on "economic layoff" (Sawhill Aff., ¶ 4). More basically, however, Counts I and II assert a wrongful discharge claim under a *Toussaint* theory. The Michigan courts have made it clear that *Toussaint* claims are contractual in nature. *See Valentine v. General Amer. Credit, Inc.,* 420 Mich. 256, 362 N.W.2d 628, 629 (1984); *Watassek v. Dept. of Mental Health,* 143 Mich.App. 556, 372 N.W.2d 617, 621 (1985). As the employment contract is between the employer and its employee, liability for breach of the contract cannot be asserted against nonparties to the agreement, such as supervisors. *Cf. Koppers Co., Inc. v. Garling & Langlois,* 594 F.2d 1094, 1098 (6th Cir.1979) (Michigan law does not allow nonparties to agreement to be sued for breach of contract). Therefore, if the complaint against Sawhill was based on a *Toussaint* theory alone, it would indeed have no reasonable probability of success in the state courts.

■ The claim under the Elliot–Larsen Civil Rights Act, however, is another matter. Count III sets forth a claim for age discrimination arising from the failure to recall Ball for an available job. In contrast to the result in *Toussaint* contract actions, a supervisor can be held liable for a discriminatory personnel decision under the Elliot–Larsen Act, if the supervisor was responsible for the decision. *See Kelly,* 695 F.Supp. at 356; *Jenkins v. American Red Cross,* 141 Mich.App. 785, 369 N.W.2d 223, 230 (1985).

The affidavits on file at the time of the initial remand hearing left open the distinct possibility that Sawhill was responsible for the decision not to recall Ball. The affidavits established that Sawhill was promoted to plant manager on March 15, 1989 (Sawhill Aff., ¶ 2). Ball was laid off the same day (*Id.,* ¶ 3). Plaintiffs' complaint alleges that five days later, the position of packhouse foreman was filled (Complaint, ¶ 35). Despite Ball's qualification for this job, a younger person was hired (*Id.,* ¶¶ 37–38). As noted in the Statement of Facts above, the defense affidavits said virtually nothing about the facts surrounding the decision not to recall Ball for this position,

except to say that it was a group management decision (Dressler Aff., ¶ 14) and that Sawhill did not make it (Sawhill Aff., ¶ 8). At the hearing, however, defense counsel stated that Sawhill had been asked his opinion on the subject. The defendants did not divulge the date of the decision not to recall Ball or the date of the discussions with Sawhill.

On the record before me, I concluded that defendants had not sustained their burden of showing the absence of a reasonable basis for a claim against Sawhill under the state civil rights act. Sawhill was within the class of persons—supervisory personnel—subject to liability under the act, and he held his supervisory position at the time of the alleged act of discrimination (*see* Hearing Transcript, at 19–20). Defendants' affidavits provided virtually no factual detail of the circumstances surrounding the failure to recall Ball, except for vague statements that it was a "group management decision" and that Sawhill, although apparently consulted, did not make the decision. The affidavits did not disclose the date of the decision not to recall Ball, the persons involved, or the reasons for the decision. It was clear to me at the time of the hearing that further discovery could well establish Sawhill's involvement and liability. In short, the defense affidavits did not demonstrate "by clear and convincing evidence that the joinder of a nondiverse party was done with fraudulent intent to prevent removal." *Brusseau,* 694 F.Supp. at 333.

This conclusion is supported by the recent decision in *Kelly v. Drake Beam Morin, Inc.,* 695 F.Supp. 354 (E.D.Mich.1988). *Kelly,* like the present case, involved joinder of a nondiverse supervisor in a Michigan Elliot–Larsen action. Defendants removed the case on diversity grounds despite the supervisor's presence, arguing that his joinder was fraudulent. The court rejected defendant's argument, noting that supervisors may be liable under the act for unlawful discrimination. 695 F.Supp. at 356.

Defendants in the present case rely heavily, and repeatedly, on an earlier East-

ern District case, *Fletcher v. Advo Systems, Inc.,* 616 F.Supp. 1511 (E.D.Mich. 1985). *Fletcher* involved a wrongful discharge claim, brought pursuant to a *Toussaint* theory against plaintiff's former employer and supervisors, one of whom was of nondiverse citizenship. In support of their contention that the supervisor's joinder should be ignored, defendants submitted affidavits indicating that the supervisor had no knowledge of the termination and did not participate in it. The affidavits identified the management official responsible for the termination decision. 616 F.Supp. at 1513. On the strength of this showing, and in light of the lack of any allegation in the complaint concerning the supervisor's personal involvement, the court found that the supervisor's joinder was fraudulent. *Id.* at 1515.

Defendants' heavy reliance on *Fletcher* is difficult to justify, for two reasons. First, *Fletcher* was a *Toussaint* case; supervisors are not liable, as a matter of law, for breach by the employer of a *Toussaint* agreement. Second, the affidavits in *Fletcher* were specific and were detailed enough to negate the personal involvement of the supervisor. Here, in contrast, the affidavits filed at the time of the hearing were vague and inconclusive.

Accordingly, the record adduced by defendants at the remand hearing was insufficient to negate a reasonable possibility that Sawhill might be held liable in an Elliot–Larsen discrimination claim. For this reason, complete diversity of citizenship did not exist and the case was ordered remanded.

### D.

■ In their motion for reconsideration and supporting briefs, defendants raise two objections to this conclusion. The first presents a legal issue. Defendants argue that Michigan law does not recognize a cause of action under the Elliot–Larsen Act for discriminatory failure to rehire. The second objection is factual. Defendants contend that I misread the first set of affidavits and mistakenly concluded that the decision not to recall Ball was made at a time when Sawhill was a supervisor. Defendants now say that Martin Marietta decided not to rehire Ball at the very same time that he was laid off, all before Sawhill was promoted to plant manager. Neither argument is grounds for reconsideration.

In support of their legal challenge to the sufficiency of the "failure-to-rehire" claim against Sawhill, defendants cite only one case, *Stevens v. McLouth Steel Products Corp.,* 433 Mich. 365, 446 N.W.2d 95 (1989). The stated issue in *McLouth* was the liability of a purchaser of assets for the discriminatory acts of the predecessor corporation. 446 N.W.2d at 96. *McLouth* did not state or imply that an employer who deviates from a recall policy on account of age cannot be sued under the Elliot–Larsen Act.

Neither party has cited any Michigan authority deciding this issue one way or another under the state civil rights act. As *McLouth* itself demonstrates, in such circumstances the Michigan courts generally turn to analogous federal civil-rights precedents for guidance. *McLouth,* 446 N.W.2d at 100; *see e.g., Sumner v. Goodyear Tire & Rubber Co.,* 427 Mich. 505, 398 N.W.2d 368, 376 (1986); *see also Rabidue v. Osceola Ref. Co.,* 584 F.Supp. 419, 426 (E.D.Mich. 1984), *aff'd,* 805 F.2d 611 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). The federal courts recognize that a failure to recall an employee in a protected category, in violation of an otherwise applicable recall policy, can be actionable. *See Davis v. Lambert of Arkansas, Inc.,* 781 F.2d 658, 660 (8th Cir. 1986) (Title VII); *Stacey v. Allied Stores Corp.,* 768 F.2d 402, 408 (D.C.Cir.1985) (ADEA). There is no reason to conclude that the Michigan courts would not hold likewise, and defendants have cited no case to the contrary.

■ Defendants' factual objection fares no better. Defendants assert that I erroneously concluded that the decision not to rehire Ball was made at a time when Sawhill was plant manager, contrary to the averments of the original set of affidavits. This argument is disingenuous at best. One searches in vain for any indication in

the first set of affidavits concerning the timing of this decision. Those affidavits are expressly silent concerning the timing and other circumstances surrounding the decision not to recall Ball. The record at the time of the hearing showed only that Sawhill became plant manager on March 15, 1989, and that a younger employee was hired as packhouse foreman five days later.

In support of their reconsideration argument, defendants have submitted a second affidavit of David Dressler, ostensibly to "clarify" the first affidavits. Far from clarifying the first set of affidavits, the second Dressler affidavit tells a drastically different story. The impression created by the earlier affidavits is that Ball's position was eliminated for economic reasons, not for any reason related to Ball's performance. Defendants are thereby attempting to come within the cases that hold that the *Toussaint* doctrine is inapplicable to economically motivated reductions in force. *See, e.g., Boynton v. TRW, Inc.*, 858 F.2d 1178 (6th Cir.1988) (en banc); *but see Ewers v. Stroh Brewery*, 178 Mich.App. 371, 443 N.W.2d 504, 507 (1989) (economic necessity not a *per se* defense to *Toussaint* claim). The second Dressler affidavit, in contrast, contends that Martin Marietta decided, at the time that Ball was let go for economic reasons, that he would not be rehired (Aff., ¶ 2). The decision no longer appears to be a neutral one motivated by economic concerns; apparently, a conscious decision was made not to rehire Ball because of his performance or other characteristics.

The two sets of affidavits are therefore at odds. Far from providing convincing evidence of a fraudulent joinder, defendants have only managed to raise confusion and contradiction concerning the nature of Ball's discharge, the motives underlying it, the timing of the decision and the persons involved. In such circumstances, the federal court should not conduct a trial by affidavit, nor should it engage in "a full, in-depth review of the ultimate issue of substantive liability." *Brusseau*, 694 F.Supp. at 334. Unless the facts are so clear that they negate the possibility of a claim against Sawhill as a matter of law,

fraudulent joinder should not be found. *B., Inc. v. Miller Brewing Co.*, 663 F.2d at 554; *Brusseau*, 694 F.Supp. at 334. Defendants have not come close to discharging this burden.

The cases indicate that all doubts should be resolved against removal. *Her Majesty the Queen*, 874 F.2d at 339; *Wilson v. U.S.D.A.*, 584 F.2d 137, 142 (6th Cir.1978). The present record admits of the distinct possibility that discovery will establish a viable state-law claim against Sawhill. That discovery must take place in state court.

As defendants have failed in their burden of establishing the subject-matter jurisdiction of this court, the motion for reconsideration of the remand order will be denied.