STEVENS v McLOUTH STEEL PRODUCTS CORPORATION

Docket No. 83356. Argued June 6, 1989 (Calendar No. 3). Decided September 20, 1989. Rehearing denied *post,* 1219.

Donald P. Stevens brought an action in the Wayne Circuit Court against McLouth Steel Corporation and McLouth Steel Products Corporation, its successor, claiming wrongful discharge, breach of contract, and age discrimination arising out of a failure to promote him and a subsequent failure to rehire him after a layoff. Thereafter, McLouth Steel Corporation was dismissed as a party following settlement, and the scope of the claim was narrowed to the assertion that McLouth Steel Products Corporation was liable as a successor of McLouth Steel Corporation for the alleged age discrimination. The court, Richard P. Hathaway, J., granted summary disposition in favor of the defendant, finding that it had no liability as a successor because it had no notice of the discrimination claim and that the plaintiff had not made a prima facie showing of age discrimination. The Court of Appeals, DOCTOROFF, P.J., and CYNAR and P. D. HOUK, JJ., reversed in an unpublished opinion per curiam (Docket No. 99517). The defendant appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice RILEY and Justices LEVIN, BRICKLEY, BOYLE, and ARCHER, the Supreme Court *held:*

Successor liability is foreclosed in an action alleging age discrimination brought under the Michigan Civil Rights Act where the successor corporation had no notice of the discrimination claim prior to the date of acquisition.

1. Generally, where one corporation sells its assets to another, the purchaser is not responsible for the debts and liabilities of the seller absent some exception. Under federal case law, successor liability does not attach where no charges of discrimination were filed with the appropriate agency, and the successor had no notice of contingent charges of discrimination, at or before the time of acquisition.

2. Notice obtains where there is actual knowledge of a fact or

REFERENCES

Am Jur 2d, Civil Rights §§ 226-242; Corporations §§ 2124-2133.
See the Index to Annotations under Age Discrimination; Corporations.

where, from all the facts and circumstances known at the time in question, there is reason to know. The notice must be clear, definite, explicit, and unambiguous. In this case, no facts exist which would support a finding of actual or constructive notice to the defendant.

Justice CAVANAGH concurred in the result only.

Reversed.

CORPORATIONS — CIVIL RIGHTS — SUCCESSOR LIABILITY — AGE DISCRIMINATION.

Successor liability is foreclosed in an action alleging age discrimination brought under the Michigan Civil Rights Act where the successor corporation had no notice of the discrimination claim before the date of acquisition (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Reosti & Hayes, P.C.* (by *Ronald J. Reosti*), and *Mark Granzotto* for the plaintiff.

*Butzel, Long, Gust, Klein & Van Zile* (by *Gregory V. Murray, David H. Oermann,* and *Kevin F. O'Shea*) for the defendant.

GRIFFIN, J. This lawsuit, brought under the Michigan Civil Rights Act,[1] requires us to decide whether the defendant, a successor corporation which purchased only part of the assets of a failing predecessor corporation, can be held liable for an act of alleged age discrimination committed by the predecessor prior to the acquisition. Under the circumstances of this case, where the successor corporation had no notice of the discrimination claim prior to the acquisition date, we hold that successor liability does not attach. Finding that the trial court properly granted summary disposition for defendant, we reverse the decision of the Court of Appeals.

I

Plaintiff was hired by McLouth Steel Corpora-

---

[1] MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

tion (MSC) as an industrial engineer in May of 1971, at age forty-six. He was elevated to the position of supervisor in 1974. During the ensuing years, plaintiff recruited, trained, and supervised other industrial engineers who were added to the MSC staff, including William Powell, an industrial engineer who was eighteen years younger than plaintiff.

In 1979, MSC hired Theodore Gabocy as manager of industrial engineering. According to plaintiff, Gabocy stripped plaintiff of his supervisory duties, although plaintiff continued to receive the same salary and his position remained on a par with the other engineers.

Suffering the same fate as many other companies during the recession of the early 1980s, MSC filed a petition in bankruptcy under Chapter XI on December 8, 1981. Nearly two hundred white-collar workers, not including plaintiff, were laid off. An operating agreement was approved by the federal bankruptcy court on March 29, 1982, and MSC began the immediate liquidation of its assets, with a target shutdown date of May 31, 1982. On April 15, 1982, plaintiff and Powell were laid off. Plaintiff was then fifty-seven years of age.

On May 14, 1982, the operating agreement was amended to extend the closing date to August 15, 1982. The extension permitted, in pertinent part, the retention of personnel "previously identified by McLouth as being necessary to its continued operations," including personnel identified as "necessary to implement their shutdown and baseline plans which were submitted pursuant to the Operating Agreement."

During the summer of 1982, Tang Industries, Inc., initiated negotiations to purchase the steelmaking assets of MSC. Tang formed a transition company called NEWCO in mid-August 1982 to

handle the takeover. In the meantime, the shutdown date for MSC was again extended. The negotiations culminated in a purchase agreement between NEWCO and MSC, which was signed on September 29, 1982. Three months later, the bankruptcy court approved the sale of MSC's steel-manufacturing assets to NEWCO. Shortly thereafter, NEWCO changed its name to McLouth Steel Products Corporation (MSPC), the present defendant. Msc did not cease to exist after this partial assets acquisition, but was reorganized as a nonmanufacturing concern known as MLX. To this day, MLX remains a viable business. Indeed, plaintiff received $7,500 worth of MLX stock as the settlement of his present claim against MSC.

During the negotiations with Tang in August 1982, MSC personnel manager Daniel Daywalt, who subsequently became vice-president in charge of human resources for MSPC, rehired William Powell to assist Tang with its cost analysis in connection with its contemplated takeover of MSC. It is this event which forms the basis for the instant lawsuit. Plaintiff claims that MSPC is liable under a successorship theory for age discrimination committed when MSC rehired William Powell, but did not rehire the plaintiff. The plaintiff admits that he never applied for a job with MSPC.

It is uncontroverted that the plaintiff has never filed age discrimination charges with either the federal Equal Employment Opportunity Commission or the Michigan Civil Rights Commission. Moreover, the plaintiff admits that, prior to the acquisition, he never gave notice of any age discrimination claim to MSPC or MSC.[2]

---

[2] Plaintiff testified at his deposition about defendant's knowledge of his age discrimination claim:

*Q. [Mr. Oermann]*: Did McLouth Steel Products have any

Plaintiff initiated the present cause of action against MSPC and MSC in September 1984, nearly two years after the corporate acquisition. In his complaint, plaintiff alleged claims of wrongful discharge on the basis of his termination of employment on April 15, 1982, breach of contract, age discrimination arising out of the failure to promote plaintiff in 1979, and the failure to rehire plaintiff in August 1982 after his layoff. MSC was dismissed from the suit in 1985 following its settlement with plaintiff.[3] In 1986, in response to MSPC's motion for summary disposition, plaintiff stipulated dismissal with prejudice of his breach of contract claim and his discrimination claim premised upon his failure to be promoted in 1979 and his discharge in April 1982. The scope of plaintiff's lawsuit was consequently narrowed to his assertion that MSPC is liable on a successor liability theory for the alleged age discrimination committed by MSC in August of 1982 when it

knowledge of your Age Discrimination Claim that you have alleged in this lawsuit prior to your filing of the suit that you are aware of?

A. [Mr. Stevens]: Not that I am aware of, see, I was gone from the company and then I find out from word of mouth, that Mr. Powell has been brought back into the company and that is when I started to take an action.

Q. How did you become aware of Mr. Powell coming back to . . .

A. (Interposing): By word of mouth.

Q. Do you recall who told you that?

A. No.

Q. Have you ever filed a claim with the Michigan Department of Civil Rights, Mr. Stevens?

A. No.

Q. Have you ever filed a claim with the Equal Opportunity Employment Committee?

A. No.

Q. Did you file a grievance of any kind?

A. No.

[3] No argument was made in this Court that plaintiff's settlement with MSC relieved defendant of liability.

rehired William Powell, but did not rehire plaintiff.

Defendant moved for summary disposition, pursuant to MCR 2.116(C)(10), on the remaining claim, and the trial court granted defendant's motion. The trial court found that MSPC had no successor liability because it had no notice of the discrimination claim and, in any event, plaintiff had not made out a prima facie showing of age discrimination.

The Court of Appeals reversed, finding that there were outstanding questions of material fact regarding both the issue of successor liability and the merits of plaintiff's age discrimination claim. We granted leave to appeal.

II

MCR 2.116(C)(10) requires that there be a trial unless "there is no genuine issue as to any material fact." A court must be satisfied, after reviewing the pleadings and other material supporting the motion, that " 'it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome.' " *Rizzo v Kretschmer*, 389 Mich 363, 372; 207 NW2d 316 (1973). A court is compelled to " 'give the benefit of any reasonable doubt to the opposing party.' " *Id.* With this standard in mind, we will examine the threshold issue of notice.

From the outset, MSPC has asserted a successorship defense. Pointing out the undisputed fact that it never received notice of any age discrimination charges or claim by the plaintiff until he filed his complaint, MSPC asserts that it cannot be held liable for MSC's alleged discrimination which occurred prior to the acquisition.

The well-established general rule is that when

one corporation sells its assets to another, the purchaser is not, absent some exception, responsible for the debts and liabilities of the selling corporation. See, generally, anno: 49 ALR3d 881; 15 Fletcher, Private Corporations, § 7122, p 190, n 1. This Court has rarely had the opportunity to explore and consider the doctrine of successor liability and has done so only in the context of a common-law tort action, *Chase v Michigan Telephone Co,* 121 Mich 631; 80 NW 717 (1899); *Denolf v Frank L Jursik Co,* 54 Mich App 584, 589; 221 NW2d 458 (1974), modified on other grounds, 395 Mich 661; 238 NW2d 1 (1976), and a products liability suit, *Turner v Bituminous Casualty Co,* 397 Mich 406; 244 NW2d 873 (1976). We have never had occasion to address the unique concerns arising out of a successor corporation's liability for alleged employment discrimination. The federal courts, by contrast, have considered the issue on numerous occasions.

In the seminal case of *EEOC v MacMillan Bloedel Containers, Inc,* 503 F2d 1086 (CA 6, 1974), the Sixth Circuit became the first court to address the issue of successor liability in an employment discrimination action filed under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.* The court held that the statute in question mandated application of the successorship doctrine developed in unfair labor practice cases[4] to Title VII discrimination cases:

> We hold only that Title VII per se does not prohibit the application of the successor doctrine, but rather mandates its application. Title VII was designed to eliminate discrimination in employment and the courts were given broad equitable

[4] See, e.g., *Howard Johnson Co v Detroit Local Joint Executive Bd,* 417 US 249; 94 S Ct 2236; 41 L Ed 2d 46 (1974); *Golden State Bottling Co v NLRB,* 414 US 168; 94 S Ct 414; 38 L Ed 2d 388 (1973).

powers to eradicate the present and future effects of past discrimination.

\* \* \*

Failure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy. In the case where the predecessor company no longer had any assets, monetary relief would be precluded. Such a result could encourage evasion in the guise of corporate transfers of ownership. Similarly, where relief involved seniority, reinstatement or hiring, only a successor could provide it.

It is to be emphasized that the equities of the matter favor successor liability because it is the successor who has benefited from the discriminatory employment practices of its predecessor. [*MacMillan, supra,* pp 1091-1092.]

The Sixth Circuit emphasized that the nature and extent of liability must be determined upon the facts and circumstances of each case. *Id.,* p 1092. The court concluded that evaluation of successor liability should be conducted by balancing nine factors:

1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same or substantially the same supervisory personnel, 7) whether the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production and 9) whether he produces the same product. [*Id.,* p 1094.]

See also *Local Union No 5741, UMW v NLRB,*

865 F2d 733 (CA 6, 1989), *Equal Employment Opportunity Comm v Vucitech,* 842 F2d 936 (CA 7, 1988), *Terco, Inc v Federal Coal Mine Safety & Health Review Comm,* 839 F2d 236 (CA 6, 1987), *Musikiwamba v ESSI, Inc,* 760 F2d 740 (CA 7, 1985), *Bates v Pacific Maritime Ass'n,* 744 F2d 705 (CA 9, 1984), *In re National Airlines,* 700 F2d 695 (CA 11, 1983), *Trujillo v Longhorn Mfg Co, Inc,* 694 F2d 221 (CA 10, 1982), *Rennick v Champion Int'l Corp,* 690 F Supp 603 (SD Ohio, 1987), and *Chaltry v Ollie's Idea, Inc,* 546 F Supp 44 (WD Mich, 1982).

Subsequently, however, the Sixth Circuit limited the applicability of the *MacMillan* test. In *Wiggins v Spector Freight System, Inc,* 583 F2d 882 (CA 6, 1978), the court held that a successor employer could not be held liable under federal discrimination laws if (1) charges were not filed with the EEOC at the time of the acquisition and (2) the successor corporation had no notice of any claims of discrimination at the time of the acquisition. The *Wiggins* court expressly held that where these two conditions exist, a case is "remove[d] . . . from the rationale" of *MacMillan* and successor liability does not attach. *Wiggins, supra,* p 886.

The Sixth Circuit reaffirmed *Wiggins* in *Rabidue v Osceola Refining Co,* 805 F2d 611 (CA 6, 1986). The court considered the successorship defense as it applied to a Title VII discrimination claim and, more importantly, in the present context—an allegation of unlawful discrimination under the Michigan Civil Rights Act. The Sixth Circuit held that the defendant corporation's liability as a successor under Title VII was controlled by its ruling in *Wiggins,* not *MacMillan:*

> In its subsequent decision in *Wiggins,* this circuit reaffirmed the balancing test of *MacMillan* with the caveat that upon a factual finding that (1)

charges of discrimination had not been filed with the EEOC at or before the time of acquisition, and (2) the successor had no notice of contingent charges of discrimination at or before the time of acquisition, the case was removed from the rationale of *MacMillan* and successor liability would not attach, thus relieving the trial court from applying the balancing test mandated by *MacMillan*. *Wiggins,* 583 F2d at 886. Accordingly, this court, having reviewed the record, concludes that the findings of the district court, that (1) there were no charges of discrimination filed or pending before the EEOC at or before the time of Osceola's acquisition by Texas-American, and (2) that Texas-American was unaware of any outstanding or contingent charges of discrimination at or before its acquisition of Osceola, were not clearly erroneous. The district court's disposition of the successorship issue, when considered in the context of the pronouncements of *Wiggins,* was therefore correct. The district court's conclusion that Texas-American was not legally responsible for any claims of unlawful sex discrimination or sexual harassment prior to its acquisition of Osceola is affirmed. [*Rabidue, supra,* p 616.]

The appeals court endorsed the district court's conclusion that

the [Civil Rights] Act successorship issue is to be resolved in the same manner as the Title VII successorship issue. It is readily acknowledged that there is no successorship statute in either Title VII or the [Civil Rights] Act. . . . Nevertheless, the Court believes that the Civil Rights Commission guidelines plus the Michigan decisions generally adopting the Title VII standards are enough—absent some contrary indication by the Michigan lawmakers or the Michigan judiciary—to justify applying the Title VII successorship doctrine . . . is an alternative basis for denying plaintiff's pre-acquisition [Civil Rights Act] disparate treatment claim. [*Rabidue v Osceola Refining*

*Co,* 584 F Supp 419, 427 (ED Mich, 1984). See 805 F2d at 617, n 2.]

Other federal circuits have found notice to be a factor "critical to the imposition of successor liability." *Musikiwamba v ESSI, Inc, supra,* p 750. See also *Wheeler v Snyder Buick, Inc,* 794 F2d 1228, 1232-1236 (CA 7, 1986); *Dominguez v Hotel, Motel, Restaurant & Misc Bartenders Union,* 674 F2d 732 (CA 8, 1982).

We are persuaded that the Sixth Circuit, in *Wiggins* and *Rabidue,* has enunciated an appropriate standard for determining successor liability under the present circumstances.[5] This Court has frequently drawn from federal court precedent in interpreting other aspects of the Civil Rights Act. See, e.g., *Sumner v Goodyear Tire & Rubber Co,* 427 Mich 505, 525; 398 NW2d 368 (1986); *Dep't of Civil Rights v Brighton Area Schools,* 171 Mich App 428, 437; 431 NW2d 65 (1988); *Eliel v Sears, Roebuck & Co,* 150 Mich App 137; 387 NW2d 842 (1985); *Dep't of Civil Rights v Horizon Tube,* 148 Mich App 633; 385 NW2d 685 (1986); *Adama v Doehler-Jarvis,* 115 Mich App 82; 320 NW2d 298 (1982), rev'd on other grounds, 419 Mich 905; 355 NW2d 438 (1984); *Gallaway v Chrysler Corp,* 105 Mich App 1; 306 NW2d 368 (1981); *Dep't of Civil Rights v Taylor School Dist,* 96 Mich App 43; 292 NW2d 161 (1980); *Dep't of Civil Rights v General Motors Corp,* 93 Mich App 366; 287 NW2d 240 (1979).

---

[5] While we agree that the *Rabidue* Court properly extended the notice requirement for determining successor liability to the Michigan Civil Rights Act, we disagree to the extent that its opinion can be read as requiring that a plaintiff must file a claim with either the EEOC or the Michigan Civil Rights Commission before bringing an action under the Michigan Civil Rights Act. Unlike Title VII of the federal act, the Michigan Civil Rights Act does not require a plaintiff to exhaust administrative remedies before proceeding with a civil suit. MCL 37.1607; MSA 3.550(607); *Marsh v Civil Service Dep't,* 142 Mich App 557; 370 NW2d 613 (1985).

The Sixth Circuit's emphasis upon notice is not misplaced. Not only does the concept of notice implicate due process considerations, see *EEOC v The Bailey Co,* 563 F2d 439, 450 (CA 6, 1977), but also directly affects the decision of a corporation which is contemplating a takeover or acquisition:

> The successor doctrine is derived from equitable principles, and it would be grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief or when the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or a lower purchase price.
>
> * * *
>
> The basis of the notice requirement is that the successor has some time to negotiate a change in the purchase agreement to reflect the potential liability of a lawsuit; a pleading filed at the Eleventh Hour naming the successor as a defendant clearly gives a successor little if no time to reconsider a sale that for all intents and purposes has been completed. This does not mean, of course, that the plaintiff has the burden of providing notice to the successor. Normally, the burden would be on the successor to find out from the predecessor all outstanding potential and actual liabilities. But a successor who has exercised due diligence and failed to uncover evidence of the plaintiff's lawsuit will not be found to have notice when a pleading listing it as a defendant is filed the very day the transaction is to take place. [*Musikiwamba, supra,* pp 750, 752.]

The present plaintiff has admitted that he gave no notice of an age discrimination claim to either MSC or MSPC until he filed the present lawsuit some two and a half years after his layoff. It is also undisputed that plaintiff filed neither a griev-

ance nor charges with the EEOC, the Michigan Civil Rights Commission, or any other administrative agency.

The Court of Appeals nevertheless found that a genuine issue of material fact existed regarding the notice issue:

> In the May 14, 1982, amendment of the operating agreement, it was stated that the extension operated only as long as MSC retained essential management, supervisory and operating personnel. Because plaintiff and Powell had been laid off on April 15, 1982, Gabocy remained as the sole industrial engineer for MSC after the May 14 amendment. Despite this amendment, D. G. Daywalt, the personnel manager for MSC rehired Powell as an industrial engineer on August 23, 1982. It appears that Daywalt rehired Powell while still at MSC for a position that MSC did not need. Contrary to MSPC's assertion, Daywalt did not rehire Powell to continue at MLX since MLX was never in the steel manufacturing business requiring the services of an industrial engineer. Daywalt subsequently became the vice-president in charge of human resources for MSPC. Thus, it appears that Daywalt had knowledge that, while with MSC, he rehired a much younger engineer than plaintiff at a time when only MSPC needed such services. Based on the foregoing evidence, we find that a material factual dispute exists regarding whether MSPC had notice of plaintiff's age discrimination claim. [Slip op, pp 5-6.]

The Court of Appeals in effect found that MSPC had notice of the alleged discrimination imputed to it based upon the singular fact that it retained the services of the person purportedly responsible for that discrimination, D. G. Daywalt. We disagree that notice can be derived from these facts.

"Notice" is a multifarious concept which, in

basic terms, connotes knowledge or information. A person has notice of a fact when,

> from all the information at his disposal, he has reason to know of it. That is, a person is deemed to have notice when he has actual knowledge or when from all the facts and circumstances known to him at the time in question, he has reason to know that it exists.
>
> As a general rule, a person has notice of a fact only when it is actually communicated to him in such a way that his mind can and does take cognizance of it. The essence of notice, when it is sufficient in form and content, is its objective effect on the person to whom it is given, not the subjective intent of the person who gives it. Thus, notice must be clear, definite, explicit, and unambiguous. [58 Am Jur 2d, Notice, § 2, pp 572-573.]

The present circumstances do not fall within this fundamental definition of notice. By his own admission, plaintiff never communicated in any form—orally or in writing—his subjective belief that he was a victim of discrimination to the defendant, its predecessor, *or Mr. Daywalt* until he filed his complaint in circuit court. This was two years after the acquisition. Thus, there exist no facts upon which to find either actual notice to MSPC or constructive notice imputed to the defendant through the knowledge of Mr. Daywalt.

Moreover, to equate notice to defendant with the mere act of hiring a person who *allegedly* was responsible for a discriminatory act would stretch the concept of notice too far. The purpose of the notice requirement is to allow an innocent purchaser an opportunity to protect itself from liability for acts of discrimination committed by the selling corporation prior to the sale. The standard proposed by the Court of Appeals would nullify

this whole concept of notice. An innocent purchaser would be held accountable for all unasserted wrongful conduct committed by its predecessor's employees which it has retained, simply because the personnel would be deemed to know the consequences of their discriminatory acts and such knowledge would be implied to the successor corporate entity. This approach would place a potentially enormous undisclosed and unassumed liability on a purchasing corporation so that any asset purchase would become, as defendant-appellant aptly describes it, "nothing more than a shot in the dark . . . ."

### CONCLUSION

We conclude that successor liability in a cause of action brought pursuant to the Michigan Civil Rights Act is foreclosed where, as under the circumstances of this case, the successor corporation had no notice of the discrimination claim prior to the acquisition date. Since defendant's motion for summary disposition was properly granted by the trial court, the decision of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

RILEY, C.J., and LEVIN, BRICKLEY, BOYLE, and ARCHER, JJ., concurred with GRIFFIN, J.

CAVANAGH, J., concurred in the result only.