ANTIPHON, INC v LEP TRANSPORT, INC

Docket No. 112871. Submitted February 15, 1990, at Detroit. Decided April 16, 1990.

LEP Transport, Inc., a company engaged in the business of customs brokering and international freight forwarding, refused to release cargo sent by Antiphon A.B. of Sweden to National Auto Radiator of Canada until Antiphon, Inc., of the United States paid LEP $34,029.61 which LEP claimed it was owed by Seamco, Inc., a company from whom Antiphon, in a series of mergers and acquisitions, had acquired the assets of Seamco Enterprises, Inc., a Seamco, Inc., subsidiary. Antiphon, Inc., thereafter filed an action in Wayne Circuit Court against LEP, claiming breach of contract, interference with an advantageous economic and business relationship, and unjust enrichment. After a bench trial which was preceded by plaintiff's rejection of a mediation evaluation, the court, Lucile A. Watts, J., entered a judgment of no cause of action and awarded defendant actual costs and attorney fees in the amount of $1,690.70 as a mediation sanction. Plaintiff appealed the judgment and defendant cross appealed the award of attorney fees, claiming the award to be inadequate.

The Court of Appeals held:

1. A corporation which purchases the assets of another corporation is not responsible for the debts and liabilities of the seller except when (1) there is a merger or consolidation of the two corporations, (2) the buyer expressly or impliedly agrees to assume the liabilities, (3) the buyer is a mere continuation of the seller, or (4) the sale is fraudulent. In this case, the evidence indicated that defendant, in its acquisition of the assets of Seamco Enterprises, Inc., had impliedly assumed Seamco's debts and liabilities with respect to defendant.

2. The trial court did not abuse its discretion in making the award of attorney fees to defendant.

Affirmed.

REFERENCES

Am Jur 2d, Corporations §§ 2704, 2707, 2709-2711; Costs §§ 23, 24.
See the Index to Annotations under Consolidation and Merger; Corporations; Costs; Attorney's Fees.

1. CORPORATIONS — SUCCESSOR LIABILITY.

    A corporation which purchases the assets of another corporation is not responsible for the debts and liabilities of the seller except when (1) there is a merger or consolidation of the two corporations, (2) the buyer expressly or impliedly agrees to assume the liabilities, (3) the buyer is a mere continuation of the seller, or (4) the sale is fraudulent.

2. CORPORATIONS — SUCCESSOR LIABILITY — IMPLIED ASSUMPTION OF LIABILITY.

    A successor corporation may be held responsible for the liabilities of its predecessor through an implied assumption of liability where the conduct or representations relied upon by the party asserting liability indicates an intention on the part of the buyer to pay the debts of the seller; whether such an intent exists must be determined from the facts and circumstances of each case after consideration of (1) the effect of the transfer on the creditors of the predecessor corporation and (2) admissions of liability on the part of officers or other spokespersons of the successor corporation.

3. COSTS — ATTORNEY FEES — APPEAL.

    An award of attorney fees will be upheld by the Court of Appeals absent an abuse of discretion by the trial court.

*Maxwell, Smith, Hanson & Mulvoy* (by *William C. Hanson* and *David A. Hardesty*), for plaintiff.

*Googasian, Hopkins, Rogers, Hohauser & Forhan* (by *Stephen J. Hopkins*), for defendant.

Before: DANHOF, C.J., and BRENNAN and G. S. ALLEN,* JJ.

G. S. ALLEN, J. Plaintiff Antiphon, Inc., appeals as of right from an October 28, 1988, entry of a judgment of no cause of action in favor of defendant LEP Transport, Inc.,[1] following a one-day bench trial in the Wayne Circuit Court. Antiphon

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] Since plaintiff Antiphon, Inc., commenced the instant action, defendant LEP Transport, Inc., has changed its name to LEP International, Inc.

sought the recovery of monies allegedly wrongfully paid to LEP under theories of breach of contract, interference with an advantageous economic and business relationship, and unjust enrichment. LEP cross appeals from that portion of the judgment awarding mediation sanctions in the amount of $1,690.70. We affirm.

The material facts are not in serious dispute. According to its complaint, Antiphon is a Connecticut corporation[2] wholly owned by Perstorp, Inc., a corporation located in Massachusetts, which in turn is wholly owned by Perstorp A.B., a corporation located in Sweden. Antiphon imports and sells sound-deadening materials primarily from Sweden. Antiphon also manufactures and markets felt-based "dampening pads" which are used as interior roof liners in automobiles. LEP is a New York corporation engaged in the business of customs brokering and international freight forwarding. It has an office in Detroit.[3]

In May, 1986, Antiphon A.B. forwarded to National Auto Radiator, a company located in Windsor, Ontario, Canada, pallets of high temperature steel via the vessel Can Mar Europe. Antiphon paid all invoiced charges directly related to the shipment. However, LEP notified Antiphon that it would not release the shipment to National Auto Radiator until Antiphon paid an additional $34,029.61 LEP claimed it was owed from previous shipments.[4] Rather than lose the business of Na-

[2] At trial, Staffan Cedergren, vice-president of finance and administration for Antiphon, testified that Antiphon is a Delaware corporation.

[3] The parties did not raise below and do not now claim on appeal that any law other than Michigan law should govern the resolution of the instant case.

[4] Of the $34,029.61 LEP claimed it was owed by Antiphon, Antiphon now agrees that it owed $5,833.22. The instant appeal only concerns the remaining $28,196.39.

tional Auto Radiator, Antiphon paid the amount LEP alleged it was owed. It did so, however, under protest.

LEP claimed that the $34,029.61 was due from Antiphon as a result of a debt owed to LEP by a company known as Seamco, Inc. Seamco operated three manufacturing plants in Indiana, one each in Fort Wayne, Kendallville and South Whitley. For an unidentified period of time prior to July, 1985, Seamco produced sound-dampening products pursuant to a licensing agreement with Antiphon at its Fort Wayne, Indiana, plant. Seamco also obtained the right to use the name "Antiphon" under the terms of the licensing agreement and thereafter formed an Indiana corporation known as Antiphon-Seamco, Inc. Both Seamco and Antiphon-Seamco employed LEP as a customs broker and freight forwarder for shipments of felt from Europe, primarily Finland.

At some point in time, Seamco spun off a subsidiary corporation known as Seamco Enterprises, Inc. This subsidiary corporation then acquired the assets associated with Seamco's Fort Wayne manufacturing plant and in turn sold them to Antiphon II, a corporation formed by Perstorp, Inc., for the apparent sole purpose of acquiring the Fort Wayne manufacturing plant. Seamco Enterprises, Inc., then dissolved. Thereafter Antiphon II merged with Antiphon and also dissolved. Seamco's creditors were not notified of the sales. On July 1, 1985, Antiphon began production at the Fort Wayne plant. At no time was there any common ownership of Seamco and Antiphon.

On November 19, 1986, Antiphon filed its complaint in the instant action. In its answer, LEP pled that Antiphon's postpurchase behavior led LEP to conclude that Antiphon was somehow related to Seamco and responsible for Seamco's obligations.

Among the affirmative defenses pled by LEP were noncompliance with the bulk sales provisions of the Uniform Commercial Code, MCL 440.6102; MSA 19.6102, and estoppel. The parties waived jury trial and the case was tried on September 29, 1988. Only two witnesses testified: Staffan Cedergren, vice-president of finance and administration for Antiphon, and Michael Forward, former Detroit branch office manager of LEP.

Following proofs, the trial court ruled from the bench that "as between Seamco and Antiphon, there appears to be an agreement to pay whatever came up after the closing of that sale." The court also ruled "that Plaintiff and/or its predecessor corporation at the time of the sale owed a duty to Defendant to notify them of the sale of the assets and the various mergers . . . [and that] there is no evidence that Defendant was notified of the changes due to the sale of the assets." The court then concluded:

> There was clearly an unbroken line of doing business between the Defendant and the various entities which preceded Plaintiff and the Plaintiff [sic]. Which means that $28,196.39 is their bill, which they may collect from Seamco.

Subsequently, LEP moved for an assessment of mediation sanctions pursuant to MCR 2.403(O) and entry of judgment. The court awarded LEP $1,300 in attorney fees and $390.70 in costs. LEP had sought $6,180 in attorney fees. The instant appeal and cross appeal followed.

We will first address Antiphon's challenge to the trial court's finding of successor liability and entry of the judgment of no cause of action in favor of LEP. Thereafter, we will address LEP's claim that the trial court abused its discretion when it awarded attorney fees in the amount of $1,300.

Rarely are the appellate courts of this state provided with an opportunity to explore and consider the parameters of the doctrine of corporate successor liability. To date, in Michigan, the doctrine has been examined only in the context of a common-law tort action, *Chase v Michigan Telephone Co*, 121 Mich 631; 80 NW 717 (1899), *Denolf v Frank L Jursik Co*, 54 Mich App 584, 589; 221 NW2d 458 (1974), modified on other grounds 395 Mich 661; 238 NW2d 1 (1976), a products liability action, *Turner v Bituminous Casualty Co*, 397 Mich 406; 244 NW2d 873 (1976), and an employment discrimination action, *Stevens v McLouth Steel Products Corp*, 433 Mich 365; 446 NW2d 95 (1989). Accordingly, the action before us presents an opportunity to examine the doctrine in a different context. We must determine whether Antiphon may be held responsible for the debts incurred by Seamco where neither Seamco nor Antiphon informed Seamco's creditors, in this case LEP, of the sale of some or all of the Seamco Enterprises assets and where Seamco and Antiphon engaged in activities that could reasonably lead LEP to believe that the two companies were either related or that Antiphon had assumed responsibility for the liabilities incurred by Seamco. We conclude that Antiphon may be held liable.

Generally, when one corporation sells its assets to another, the purchaser is not responsible for the debts and liabilities of the selling corporation. *Stevens, supra* at 371. However, as with any general rule, there are exceptions:

> The law is well settled in regard to liability of the consolidated or purchasing corporation for the debts and liabilities of the consolidating or selling corporation. Such obligations are assumed (1) when two or more corporations consolidate and form a new corporation, making no provision for

the payment of the obligations of the old; (2) when by agreement, express or implied, a purchasing corporation promises to pay the debts of the selling corporation; (3) when the new corporation is a mere continuance of the old; (4) when the sale is fraudulent, and the property of the old corporation, liable for its debts, can be followed into the hands of the purchaser. *Austin v Bank,* 49 Neb. 412 [68 NW 628 (1896)]. [*Chase, supra* at 634.]

The trial court in the instant case did not expressly state which, if any, of the above-enumerated exceptions it found applicable. A review of the trial court's opinion leads us to conclude that the court based its finding of successor liability on the equitable doctrine of estoppel[5] and thus adopted a defense asserted by LEP. The question before us then becomes whether the doctrine of estoppel may be harmonized with any of the exceptions to the general rule against successor liability.

In *Wiersma v Michigan Bell Telephone Co,* 156 Mich App 176, 184-185; 401 NW2d 265 (1986), a panel of this Court stated:

An equitable estoppel arises where: (1) a party by representations, admissions or silence induces another party to believe facts; (2) the other party detrimentally relies and acts on this belief; and (3) the other party will be prejudiced if the first party is allowed to deny the existence of the facts. *West Bay Exploration Co v Amoco Production Co,* 148 Mich App 197, 207; 384 NW2d 407 (1986).

The panel also noted that a party "may be estopped by its acts, conduct, silence and acquiescence." *Id.* at 185.

---

[5] Antiphon asserts that the trial court predicated its finding of liability on a violation of the bulk sales provisions of MCL 440.6102; MSA 19.6102. We do not read the court's opinion as reaching such a conclusion, either explicitly or implicitly.

In the realm of corporate successor liability, a successor corporation may be held responsible for the liabilities incurred by its predecessor where the facts demonstrate that there existed an implied agreement to assume liability. *Chase, supra* at 634. Although there is no precise rule governing the finding of implied liability, there is authority that suggests such a finding may be made where the conduct or representations relied upon by the party asserting liability indicate an intention on the part of the buyer to pay the debts of the seller. See *Ladjevardian v Laidlaw-Coggeshall, Inc,* 431 F Supp 835, 839 (SD NY, 1977); 15 Fletcher, Cyclopedia Corporations, § 7124, p 211. Whether such an intent exists must be determined from the facts and circumstances of each case. *Ladjevardian, supra*; Fletcher, *supra.* The factors to consider are: (1) the effect of the transfer on the creditors of the predecessor corporation; and (2) admissions of liability on the part of officers or other spokespersons of the successor corporation. *Ladjevardian, supra*; Fletcher, *supra.*

We believe that the rationale underlying an application of the doctrine of estoppel and the implied agreement to assume liability exception are the same—that rationale being that a party may not, by its conduct or silence, assume a position that if maintained would result in an injustice to another. Accordingly, we conclude that when the trial court found that Antiphon was estopped from denying successor liability it, in actuality, was deciding that Antiphon's conduct gave rise to an implied acceptance of liability and that LEP was reasonable in relying on this implied acceptance to its detriment. The trial court's ruling falls within the parameters of the second enumerated exception set forth in *Chase, supra.*

We also conclude that the trial court's finding of

liability was supported by the evidence adduced at trial. The conduct of Seamco and Antiphon, combined with their silence about the sale, could have led LEP to reasonably believe either that the two companies were related or that Antiphon had assumed the liabilities of Seamco.

A review of the evidentiary record reveals that the last group of invoices paid by Seamco was by check dated June 28, 1985, bearing the name "Seamco, Inc." and the address "Kendallville, Indiana." Thereafter, LEP sent invoices to "Seamco Enterprises, Inc., Fort Wayne, Indiana," and "Antiphon-Seamco" at that same address and on eight occasions through November 20, 1985, the invoices were paid by checks bearing the name "Antiphon-Seamco, Inc., Fort Wayne, Indiana." Moreover, invoices for May and June, 1985, for costs incurred prior to the sale were paid by Antiphon-Seamco after the sale. In December, 1985, "Antiphon II, Inc., Fort Wayne, Indiana" sent LEP three checks in payment of a number of invoices sent to "Antiphon-Seamco, Inc., Fort Wayne, Indiana." Finally, three invoices sent to "Antiphon, Inc., Fort Wayne, Indiana" were paid by Antiphon by check dated February 12, 1986.

Additionally, the record reveals that during the same period of time LEP dealt with the same personnel, the orders were placed in the same manner, the business operations were conducted in the same manner, and neither Seamco nor any of its subsequent incarnations ever informed LEP of the change in ownership of the Fort Wayne plant. Moreover, as a result of Seamco-Antiphon's silence, LEP forewent its other creditor's remedies against Seamco before Seamco became uncollectible.

On these facts, we conclude that the trial court correctly found that Antiphon was estopped from

denying liability by the existence of an implied agreement to assume the liabilities of Seamco.

We now turn to LEP's argument that the trial court abused its discretion when it awarded attorney fees in the amount of $1,300.

The instant case was mediated at $14,000 for plaintiff on March 21, 1988. Both parties rejected the mediation award. Following trial, LEP moved for mediation sanctions including reasonable attorney fees based on MCR 2.403(O). LEP sought an award of $6,180 based on one day of trial at $1,000 and 51.8 hours of trial preparation at $100 per hour. The trial court held no hearing on LEP's request. In a written decision the court awarded LEP actual costs of $390.70 and attorney fees of $1,300 ($500 for one-half day of trial and $800 for eight hours of trial preparation at $100 per hour). We will uphold an award of attorney fees absent an abuse of discretion. *Petterman v Haverhill Farms, Inc*, 125 Mich App 30, 32; 335 NW2d 710 (1983).

We disagree with LEP that an award of attorney fees in the amount of $1,300 was inadequate. The case was not complicated and trial lasted less than one-half day. Accordingly, we do not believe that the trial court abused its discretion when it awarded LEP fees in the amount of $1,300.

Affirmed. No costs, neither party prevailing in full.