**Michael F. SCHMIDT, Plaintiff,**

v.

**E. Packer WILBUR, E.P.W. Properties, Inc., Wilbur & Co., Inc., Realty International Corp., Thomson McKinnon Securities, Inc., and Prudential Bache Securities, Inc., Defendants.**

**No. 91–70859.**

United States District Court, E.D. Michigan, S.D.

Feb. 10, 1992.

---

Michael F. Schmidt, Harvey Kruse Westen & Milan, P.C., Detroit, Mich., for plaintiff.

Eric J. Pelton, Cynthia M. York, Detroit, Mich., for E.P. Wilbur & Co., Inc.

William J. Wenzel, Pullman & Conley, Bridgeport, Conn., for defendants.

## OPINION AND ORDER GRANTING DEFENDANT PRUDENTIAL SECURITIES' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

On January 23, 1991, plaintiff Michael F. Schmidt filed his complaint in Wayne County Circuit Court. Defendants removed the lawsuit to federal court February 5, 1991. Defendant Prudential Securities, Inc. ["Prudential"], filed the instant motion for summary judgment March 4, 1991. Plaintiff filed his response March 27, 1991. Prudential filed a reply April 5, 1991, and, by leave of this court, plaintiff filed a reply April 19, 1991. Because plaintiff has failed in his burden of production, Prudential's motion for summary judgment will be granted.

### FACTS

In his four-count complaint, Plaintiff alleges breach of contract, fraud, negligence and conspiracy against defendants arising out of plaintiff's purchase of a limited partnership interest in Crossings at Oakbrook Limited Partnership. In addition to his claims against Thomson–McKinnon Securities, Inc. ["TMS"] and the other defendants, plaintiff also named Prudential in the disputed action. Plaintiff's claim against Prudential is based upon Prudential's acquisition of certain TMS assets July 17, 1989. Because Prudential has purchased part of TMS, plaintiff maintains that Prudential is also responsible for the liabilities of TMS as a successor in interest

to Realty International Corporation ["RIC"][1] and TMS.

Prudential has filed the instant summary judgment motion asserting that it is not responsible for the liabilities of TMS and RIC because it is neither a successor in interest nor a successor in liability.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." (Citation omitted.) *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## APPLICABLE LAW

■ Michigan courts have held that when one corporation sells its assets to another, the purchaser is not responsible for the debts and liabilities of the seller. *Stevens v. McLouth Steel Prods. Corp.*, 433 Mich. 365, 370–71, 446 N.W.2d 95 (1989); *Antiphon, Inc. v. LEP Transport, Inc.*, 183 Mich.App. 377, 382, 454 N.W.2d 222 (1990). However, the Michigan Supreme Court has carved out five exceptions to the general rule. Such debts and liabilities are assumed

> (1) where there is an express or implied assumption of liability;

---

**1.** RIC is an indirect, wholly-owned subsidiary of TMS.

(2) where the transaction amounts to a consolidation or merger;

(3) where the transaction was fraudulent;

(4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or

(5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 417 n. 3, 244 N.W.2d 873 (1976); *see also Chase v. Michigan Tel. Co.*, 121 Mich. 631, 634, 80 N.W. 717 (1899); *Antiphon*, 183 Mich.App. at 382–83, 454 N.W.2d 222. The Michigan Supreme Court has also spelled out three criteria as guidelines to establish whether there is a *de facto* merger between the transferee and the transferor corporations. *Turner*, 397 Mich. at 430, 244 N.W.2d 873. These three criteria are

(1) whether there is a continuation of the enterprise of the seller so that there is a continuity of management, personnel, physical location, assets and general business operations;

(2) whether the seller ceases its ordinary business operations, liquidates and dissolves as soon as legally and practically possible; and

(3) whether the purchaser assumes those liabilities and obligations of the seller necessary for the uninterrupted continuation of normal business operations of the seller.

*See id.* at 420, 244 N.W.2d 873 (citing *Shannon v. Samuel Langston Co.*, 379 F.Supp. 797, 801 (W.D.Mich.1974)). The Michigan Supreme Court also added that whether the "purchasing corporation held itself out to the world as the effective continuation of the seller corporation" is also of some import. *Id.* at 430, 244 N.W.2d 873. However, these are mere guidelines that may change with each different type of action. *See Stevens*, 433 Mich. at 371, 446 N.W.2d 95; *Antiphon*, 183 Mich.App. at 382, 454 N.W.2d 222. Also, where, as here, the sale of assets is

for cash, the first criterion establishing continuity is the sole test. *Haney v. Bendix Corp.*, 88 Mich.App. 747, 751, 279 N.W.2d 544 (1979).

## ANALYSIS

If Prudential is to be held liable for any of TMS's or RIC's obligations, the sale of assets from TMS to Prudential must come under one of the exceptions enunciated in *Turner*. It is not alleged by plaintiff that Prudential is the mere continuation or reincarnation of TMS and RIC. It is also not alleged by plaintiff that the transaction was fraudulent. Plaintiff further does not allege that the transaction was to deny creditors financial recourse. Therefore, exceptions three, four and five are not relevant to this case.

■ Plaintiff does allege that Prudential may have expressly or impliedly assumed some or all of TMS's debts and obligations. Prudential submits as one of its exhibits certain pages from the agreement commemorating the sale of assets from TMS to Prudential ["Agreement"]. The relevant language of Prudential's exhibit reads

*Except as otherwise provided* herein or in the Conversion Agreement, Buyer shall not acquire any of the assets of Seller or any of its subsidiaries and shall not assume any liabilities, obligations, contracts, undertakings or commitments of seller or any of its subsidiaries of any nature whatsoever.

Prudential's Mot.Ex. at 4. Because plaintiff has failed to show that the Agreement contains language expressly or impliedly assuming TMS's liabilities, plaintiff's bare assertions are insufficient to raise a genuine issue of material fact on this point. Therefore, *Turner's* exception number one is not applicable.

■ Further, plaintiff alleges that Prudential and TMS and RIC consolidated or *de facto* merged. Plaintiff states that the TMS enterprise was continued by Prudential. Plaintiff also alleges that Prudential sought to retain TMS's and RIC's management, personnel, physical location, assets and general business operations. Prudential disputes this allegation. In its briefs

and affidavits,[2] Prudential states that the management of Prudential did not change, the TMS management did not move into management positions with Prudential and only carefully chosen lower-level employees were even interviewed by Prudential. Prudential also alleges that a majority of TMS's employees did not join Prudential. Further, Prudential states that it did not retain "key" managerial employees of TMS.

Plaintiff offers no affidavits to sustain its burden of production. Plaintiff relies upon the Agreement to show that a continuation of TMS actually occurred. However, the Agreement does not state that the events spelled out on paper came to fruition. The retention of branch managers and account executives by Prudential was an option held by Prudential.[3] There is no evidence that Prudential exercised this option. Further, the best efforts to retain branch managers and account executives to be used by Prudential may have only kept a few, if any, TMS personnel.[4] Plaintiff has offered no evidence to show that any TMS personnel were employed by Prudential. In fact, defendant's affiant affirmatively states that there is no identity of officers, directors, management, personnel or stockholders between Prudential and TMS and RIC.[5] This same analysis is applicable to the other "certain employees" mentioned in the Agreement.[6] Finally, the customer accounts mentioned in the Agreement were to subject to customer approval.[7] There is no evidence that any of these accounts ever were transferred. Without evidence to support its claims, Prudential's affidavits must be taken as dispositive.

Ultimately, it is difficult to understand how Prudential can be held liable for the allegedly fraudulent business transactions of TMS and RIC by merely purchasing certain leases and fixed assets.

 Finally, the doctrine of *res judicata* does bear mentioning here. The United States District Court for the Eastern District of Louisiana has held that Prudential holds no successor liability flowing from TMS or RIC. *Simpson v. DeRussy*, No. 89–3461, 1990 WL 357272 (E.D.La. May 10, 1990). That court used a successor liability formula sufficiently similar to that contained in *Turner* to be at least persuasive if not dispositive. *See Simpson*, No. 89–3461, slip op. at 3 (citing *Ricciardello v. J.W. Gant & Co.*, 717 F.Supp. 56, 58 (D.Conn.1989)). This court agrees with the analysis in *Simpson* and holds that Prudential is not liable for the previous business practices of TMS or RIC.

### ORDER

For the foregoing reasons it is hereby ORDERED that defendant Prudential Securities, Inc.'s motion for summary judgment is GRANTED.

SO ORDERED.

2. Prudential offers the affidavits of James J. Rizzo, First Vice President of Prudential (dated April 4, 1991, and September 30, 1991) ["First Rizzo Aff." and "Second Rizzo Aff." respectively].

3. July 17, 1989 agreement between Prudential–Bache Securities, Inc. and Thomson McKinnon Securities, Inc. at 4 ["Agreement"].

4. Agreement at 5.

5. First Rizzo Aff. at ¶ 2; Second Rizzo Aff. at ¶¶ 5 & 6.

6. Agreement at 10.

7. Agreement at 24.