CAVANAGH, J.
(dissenting). I agree with the majority’s conclusion that there was insufficient evidence of retaliation based on plaintiffs alleged opposition to the sexual harassment of her coworkers.
I disagree with the majority’s conclusion that plaintiff presented insufficient evidence that she was retaliated against for filing a grievance. Moreover, I disagree with the majority’s decision to overrule Sumner v Goodyear Tire & Rubber Co, 427 Mich 505; 398 NW2d 368 (1986), and abolish the continuing violations doctrine. Finally, I disagree with the majority’s rationale that because the continuing violations doctrine no longer applies, evidence of prior acts must necessarily be excluded from consideration. Accordingly, I must respectfully dissent.
I. PLAINTIFF PRESENTED SUFFICIENT EVIDENCE OF RETALIATION FOR FILING A GRIEVANCE
The Michigan Civil Rights Act “is aimed at ‘the *291 prejudices and biases’ borne against persons because of their membership in a certain class, and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases.” Miller v C A Muer Corp, 420 Mich 355, 363; 362 NW2d 650 (1984) (citations omitted). To this end, the Civil Rights Act, MCL 37.2701, provides in pertinent part:
Two or more persons shall not conspire to, or a person shall not:
(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.
The Court of Appeals has observed that the purposes of the retaliation provisions of the act are “to protect access to the machinery available to seek redress for civil rights violations and to protect operation of that machinery once it has been engaged.” DeFlaviis v Lord & Taylor, Inc, 223 Mich App 432, 440; 566 NW2d 661 (1997) (citation omitted).
This Court has yet to formally delineate the prima facie elements of a retaliation claim under the Michigan Civil Rights Act. The Court of Appeals, however, has relied on federal precedent to formulate its own test. Today, the majority adopts the Court of Appeals test as its own. See ante at 273. Thus, to establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show: “(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.” DeFlaviis, supra at 436, *292 citing Polk v Yellow Freight Sys, Inc, 876 F2d 527, 531 (CA 6, 1989), Booker v Brown & Williamson Tobacco Co, Inc, 879 F2d 1304, 1310 (CA 6, 1989), and Kroll v Disney Store, Inc, 899 F Supp 344, 348 (ED Mich, 1995). Using these elements, I would conclude that the trial court properly denied defendant’s motion for judgment notwithstanding the verdict (JNOV) on plaintiffs claim that she was retaliated against for filing a grievance against her supervisor.
As noted by the majority, the first two elements of the test are satisfied because plaintiff engaged in protected activity and defendant was aware that plaintiff had engaged in this activity. See ante at 277-278. Moreover, I would conclude that sufficient evidence was presented on the third and fourth elements; namely, there was sufficient evidence that defendant took adverse employment action against plaintiff and there was a causal connection between the filing of the grievance and the adverse employment action. With regard to these elements, I find the Court of Appeals characterization of the evidence persuasive. The Court of Appeals noted:
[PJlaintiff sufficiently established the elements of a retaliation claim hy way of her evidence that (1) plaintiff filed a grievance alleging racial discrimination in June 1987; (2) Cathcart, a supervisor, knew about the grievance; (3) after filing the grievance, plaintiff failed to receive the next promotion that she sought, posted in December 1988, despite being qualified for the position; (4) plaintiff failed to receive seven total promotions between 1989 and 1997, despite being qualified for the positions; (5) individuals less qualified than plaintiff received promotions while plaintiff did not; (6) in 1994, plaintiff was transferred to a windowless office from which she could hear noises emanating from the adjacent bathroom, while persons more senior [sic] to plaintiff received better offices; (7) in 1996, Cathcart made a statement disparaging to blacks; (8) Cathcart made another comment disparaging to Indians; (9) Cath *293 cart reprimanded plaintiff but not others for minor infractions; (10) Cathcart ignored plaintiff in staff meetings and treated her poorly in the hallways; (11) in 1984 or 1985, Cathcart used the word “n--” in referring to blacks; and (12) Cathcart remained in plaintiffs chain of command throughout the years. [Unpublished opinion per curiam of the Court of Appeals, issued March 29, 2002 (Docket No. 223829).][1]
A motion for JNOV should be granted only if the evidence, viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law. Orzel v Scott Drug Co, 449 Mich 550, 557-558; 537 NW2d 208 (1995). This Court reviews de novo a trial court’s decision to grant or deny a motion for JNOV and likewise reviews the evidence and all reasonable inferences in the light most favorable to the nonmoving party. Craig v Oakwood Hosp, 471 Mich 67, 77; 684 NW2d 296 (2004). Under this standard, I cannot say that the evidence detailed by the Court of Appeals fails to establish a claim of retaliation as a matter of law. Moreover, while reasonable jurors could reach different conclusions, I cannot say that no reasonable juror could conclude that plaintiff was retaliated against for filing a grievance. Thus, I would hold that the trial court properly denied defendant’s motion for JNOV on the retaliation theory.[2]
*294 II. SUMNER AND THE CONTINUING VIOLATIONS DOCTRINE
The Michigan Civil Rights Act contains no internal statute of limitations. Nonetheless, this Court has applied the general three-year limitations period set forth in MCL 600.5805 to claims brought under the act. See, e.g., Mair v Consumers Power Co, 419 Mich 74; 348 NW2d 256 (1984). However, in recognition that such claims tend to “unfold rather than occur,” this Court unanimously adopted a narrow exception to the statute of limitations — the continuing violations doctrine. Sumner, supra at 526. The continuing violations doctrine dictates that unlawful acts that occur beyond the period of limitations are actionable, as long as the acts are sufficiently related to constitute a pattern and one of the acts occurred within the period of limitations.
As noted by the Sumner Court, the federal courts developed the continuing violations doctrine as a narrow exception to Title VH’s short limitations period. This Court detailed the reasons for the exception, reasons that still ring true today:
These courts expressed concern with a number of factors which they felt militated against a strict application of the limitation requirement. First, Title VII is a remedial statute whose purpose is to root out discrimination and make injured parties whole. Second, employees are generally lay people, who do not know that they must act quickly or risk losing their cause of action. An employee may fear reprisal by the employer, or may refer the matter to a union, which may not take any action within the limitation period. Employees may also delay filing their complaints in the hope of internal resolution or simply to give the employer a second chance. Third, and most importantly, many discriminatory acts occur in such a manner that it is *295 difficult to precisely define when they took place. One might say that they unfold rather than occur. [Id. at 525-526.]
In light of the United States Supreme Court’s decision in United Air Lines, Inc v Evans, 431 US 553; 97 S Ct 1885; 52 L Ed 2d 571 (1977), this Court observed that the continuing violations doctrine generally consists of two subtheories:
The first subtheory involves allegations that an employer has engaged in a continuous policy of discrimination. In such a case, the plaintiff is alleging that “he is challenging not just discriminatory conduct which has affected him, but also, or alternatively, the underlying employment system which has harmed or which threatens to harm him and other members of his class.”
The second subtheory, the “continuing course of conduct” or “series of events” situation is relevant where an employee challenges a series of allegedly discriminatory acts which are sufficiently related so as to constitute a pattern, only one of which occurred within the limitation period. [Sumner, supra at 528 (citations omitted).]
Here, plaintiff is alleging that defendant retaliated against her through a continuing course of conduct. Thus, the second subtheory applies to this case.
In determining whether a continuing course of conduct exists under the second subtheory, this Court adopted the approach set forth by-the Fifth Circuit Court of Appeals:
“The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee’s *296 awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?” [Sumner, supra at 538, quoting Berry v LSU Bd of Supervisors, 715 F2d 971, 981 (CA 5, 1983).]
Under these circumstances, I would conclude that the continuing violations doctrine applies to plaintiffs retaliation claim. First, the acts involve the same type of continuing violation: repeated denials of promotions and disparate treatment in retaliation for engaging in protected activity. Second, defendant’s acts occurred with frequency: plaintiff was consistently denied every promotion she applied for from the date the grievance was filed. Finally, on these facts, the consistent denials of promotions and disparate treatment did not have the degree of permanence that would necessarily preclude application of the continuing violations doctrine. Plaintiff did not suspect that the impetus for the adverse actions was the filing of the grievance until much later. While retaliatory conduct may be considered a discrete act under some circumstances, the facts of this case demonstrate that retaliation is often just as subtle and hard to detect as discrimination. Thus, I would apply the continuing violations doctrine and conclude that all the adverse employment actions taken by defendant against plaintiff are actionable.
HI. THE MAJORITY'S DECISION TO OVERRULE SUMNER
The majority reasons that Sumner and the continuing violations doctrine have no place in Michigan law because they bear little relationship to the actual language of MCL 600.5805 and 600.5827. Rather, MCL 600.5805 “requires a plaintiff to commence an action within three years of each adverse employment act by a *297 defendant. . . . Nothing in these provisions permits a plaintiff to recover for injuries outside the limitations period when they are susceptible to being characterized as ‘continuing violations.’ ” Ante at 282. Moreover, the majority concludes that Sumner “unduly” relied on federal case law. Id. at 283. According to the majority, the continuing violations doctrine is arguably given support by the language of Title VII, unlike the language of Michigan’s statutory provisions. Additionally, Congress amended Title VII to impose a two-year limit on recovering back pay and, thus, implicitly endorsed the doctrine. The majority posits that there is no corresponding provision in Michigan law that even implicitly endorses the continuing violations doctrine. Accordingly, the majority overrules Sumner and holds that a person must file a claim under the Civil Rights Act within three years of the date his or her cause of action accrues.
“[T]his Court has consistently opined that, absent the rarest circumstances, we should remain faithful to established precedent.” Brown v Manistee Co Rd Comm, 452 Mich 354, 365; 550 NW2d 215 (1996). The doctrine of stare decisis is “ ‘the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.’ ” Robinson v Detroit, 462 Mich 439, 463; 613 NW2d 307 (2000) (citation omitted). The current Court has detailed four principles to consider before established precedent is overruled: “(1) whether the earlier case was wrongly decided,[3] (2) whether the decision defies ‘practical workability,’ (3) whether reli *298 anee interests would work an undue hardship, and (4) whether changes in the law or facts no longer justify the questioned decision.” Pohutski v City of Allen Park, 465 Mich 675, 694; 641 NW2d 219 (2002). In my view, none of these factors weighs in favor of overruling Sumner and abolishing the continuing violations doctrine.
First, I cannot say that Sumner was wrongly decided. Like its federal counterpart, the Civil Rights Act “is a remedial statute whose purpose is to root out discrimination and make injured parties whole.” Sumner, supra at 525. Because the Civil Rights Act is remedial in nature, it should be liberally construed. Kassab v Michigan Basic Prop Ins Ass’n, 441 Mich 433, 467; 491 NW2d 545 (1992) (CAVANAGH, C.J., dissenting); see also Kassab, supra at 451 (MALLETT, J., dissenting).
In Sumner, supra at 526, this Court astutely observed that “many discriminatory acts occur in such a manner that it is difficult to precisely define when they took place.” Indeed, determining when a claim accrues or occurs is surprisingly difficult because violations of the act may not manifest themselves except at the end of a lengthy period. Whether a particular act is discrete or nondiscrete often depends on the circumstances of the individual case. And even so-called discrete acts may not always be readily identifiable. In fact, the United States Supreme Court recently left open the question whether discriminatory employment actions are subject to some sort of discovery rule. The Court noted that
[t]here may be circumstances where it will be difficult to determine when the time period should begin to run. One issue that may arise in such circumstances is whether the *299 time begins to run when the injury occurs as opposed to when the injury reasonably should have been discovered. But this case presents no occasion to resolve that issue. [Nat’l R Passenger Corp v Morgan, 536 US 101, 114 n 7; 122 S Ct 2061; 153 L Ed 2d 106 (2002).]
The continuing violations doctrine remains a salutary tool because, as a practical matter, it may be difficult to determine when a violation of the act was committed or when a civil rights claim accrues for purposes of MCL 600.5827.[4] Simply stated, a victim of discrimination may not be aware that he or she is being or has been discriminated against until after the period of limitations has expired. The continuing violations doctrine better protects the victim and does not reflexively give the discriminating party the benefit of judicial hindsight. However, the Sumner Court was careful to explain that not every prior act will be actionable under the continuing violations doctrine. Even though discriminatory acts may be difficult to ascertain, the continuing violations doctrine will not apply if there is not a pattern, the acts do not involve the same subject matter, the acts do not occur with frequency, or the plaintiff should have been aware that his or her rights under the act were being violated. In my view, Sumner remains a sound decision because it seeks to ameliorate the effects of strictly applying the limitations period where it is difficult to ascertain exactly when a civil rights claim accrues.
*300 Second, Sumner does not defy practical workability. As noted above, just the opposite is true. Because it is often extremely difficult to ascertain when a claim accrues, application of the continuing violations doctrine proceeds on a case-by-case basis. The doctrine is generally analyzed under two distinct subtheories and this Court has set forth a clear three-factor test to assist courts in determining whether a continuing course of discriminatory conduct exists. Sumner, supra at 538. In my view, Sumner remains a highly workable and preferable decision.
Third, overruling Sumner would work an undue hardship because of the reliance interests placed on that decision. Sumner has been entrenched in this state’s jurisprudence for nearly twenty years. Further, as a practical matter, the continuing violations doctrine encourages lay employees, who may not be supremely confident that their rights are being violated, to seek internal resolution of their suspected complaints. Needless to say, such a course of action is advantageous to all persons involved. In reliance on Sumner, an employee could rest assured that possible violations of the Civil Rights Act would not become stale while attempting to resolve the complaint internally. Moreover, employees’ fear of reprisals by employers was greatly diminished because of Sumner’s safeguards. Because of Sumner, both employees and employers were relieved of the burden of being on “litigation watch” at the first sign of trouble. Employees and employers have relied on Sumner for quite some time and conducted their affairs and operations accordingly.
In my view, affirming the principles announced in Sumner would work far less of a hardship than overruling that decision. Indeed, opponents of the continu *301 ing violations doctrine should be careful what they wish for. Overruling Sumner may actually encourage employees to run to court at the first sign of trouble. This will put a strain on everyone involved in the process — the employee, the employer, and the courts. Such inherent tension was alleviated by Sumner and the continuing violations doctrine. Thus, because the citizens of this state have justifiably relied on Sumner for nearly two decades and overriding that decision would unnecessarily disrupt these reliance interests, I would refrain from overruling Sumner.
Fourth and finally, there has been no change in the law or facts that has cast doubt on the wisdom of Sumner. Indeed, this Court has consistently cited and suggested that Sumner’s reliance on federal precedent was warranted. See, e.g., Chambers v Trettco, Inc, 463 Mich 297, 313; 614 NW2d 910 (2000) (“We are many times guided in our interpretation of the Michigan Civil Rights Act by federal interpretations of its counterpart federal statute. See, e.g., Sumner v Goodyear Tire & Rubber Co, 427 Mich 505, 525; 398 NW2d 368 (1986).”).[5] Thus, there has been no seismic shift, except for the makeup of this Court, that would warrant overruling Sumner and abolishing the continuing violations doctrine.
In sum, I disagree with the majority’s decision to overrule Sumner. I believe that the continuing viola *302 tions doctrine remains a venerable approach to analyzing claims brought under the Michigan Civil Rights Act.[6]
IV THE MAJORITY’S APPLICATION OF ITS NEW RULE IS FUNDAMENTALLY FLAWED
Even assuming the continuing violations doctrine no longer pertains, the majority’s additional reasoning cannot withstand scrutiny. Under the continuing violations doctrine, unlawful acts that occur beyond the period of limitations are actionable, as long as the acts are sufficiently related to constitute a pattern and one of the acts occurred within the period of limitations. The majority properly acknowledges this point of law.[7] *303 Thus, the natural consequence of overruling Sumner and abolishing the continuing violations doctrine is that acts occurring beyond the period of limitations are no longer actionable. Yet the majority goes even further and reasons that evidence of acts occurring outside the period of limitations must be excluded.[8] Such a conclusion is fundamentally flawed.
For example, in Morgan, supra at 105, the United Stated Supreme Court held that Title VII “precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period.”[9] While I disagree with the Morgan Court’s holding, it is important to observe the Court’s subsequent rationale. In light of its holding, the Morgan Court noted, “As we have held, however, this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel.” Id. at 113. Importantly, the Court also reasoned, “Nor does the statute bar an employee from using *304 the prior acts as background evidence in support of a timely claim.” Id. (emphasis added). This rationale comports with the natural consequences of abolishing the continuing violations doctrine: prior acts outside the period of limitations are not actionable (i.e., cannot serve as the basis for imposing liability), but these acts may still be used as background evidence to support a timely claim. Thus, the majority’s conclusion that acts occurring outside the limitations period must be “removed from consideration” is unacceptable. Ante at 266.
I disagree with the majority’s stated conclusion that evidence of acts occurring outside the limitations period must be “removed from consideration” because, as a practical matter, such evidence often must be considered, as the majority’s rationale confirms. While certainly not a novel approach, I believe that it is entirely proper to examine relevant evidence even though such evidence may itself not be actionable. Stated differently, the decision whether to admit certain evidence is within the trial court’s sound discretion and will not be disturbed absent an abuse of discretion. See, e.g., People v McDaniel, 469 Mich 409, 412; 670 NW2d 659 (2003). Therefore, even though so-called untimely acts may not be actionable under the majority’s approach, such acts may be considered as relevant background evidence in most instances. In my view, the majority misunderstands the consequences of overruling Sumner.
In response, the majority essentially argues that the United States Supreme Court in Morgan attempted to resurrect the continuing violations doctrine after having overruled the doctrine.” The majority moans that consideration of background evidence would allow an employee to indirectly recover for past acts. The majority, transfixed with destroying every shred of the *305 additional protections afforded by the continuing violations doctrine, has lost sight of the bigger picture. The majority admittedly fails to see the practical difference between the Sumner rule and the logic employed by the Morgan Court. I would simply urge reexamination of these opinions because the differences are quite clear.
The United States Supreme Court concluded that the result of abolishing the continuing violations doctrine is that untimely claims are not actionable, period. Inexplicably, however, the majority feels compelled to conclude that any evidence that may have once constituted a claim under the Civil Rights Act, but is now barred by the statute of limitations, may never be admitted. But, again, this is not the majority’s decision to make. If the trial court determines that evidence of the now time-barred claim is relevant to the timely claim, such evidence may be admitted as background evidence, but may not serve as the basis for any damage award. Sometimes the time-barred claim will not be relevant and the trial court may conclude that such background evidence is unnecessary. In other instances, the trial court may exercise its sound discretion and admit such evidence. The majority, however, oversteps its bounds when it concludes that such evidence may never be relevant and, therefore, may never be considered. I do not know how the Morgan decision could make this point of law any clearer.
In sum, I believe that the majority’s resolve to dismantle the continuing violations doctrine has led it to an illogical result. The majority is essentially arguing that, in Morgan, the United States Supreme Court attempted to resurrect the continuing violations doctrine after having overruled the doctrine. This argument makes no sense. Rather, I believe that the *306 Morgan Court properly acknowledged that overruling the continuing violations doctrine means that untimely claims are not actionable, but, in some instances, the trial court may determine that evidence of these untimely claims may be admissible to provide necessary context.
V CONCLUSION
I would hold that plaintiff presented sufficient evidence for a reasonable juror to conclude that she was retaliated against for filing her grievance. Moreover, I would affirm the principles announced in Sumner, and apply the continuing violations doctrine to plaintiffs claim of retaliation based on the grievance theory. Finally, even if I were to agree with the majority that the continuing violations doctrine is no longer viable, the natural consequence of abolishing that doctrine is not to exclude untimely acts from consideration. Rather, abolishing the continuing violations doctrine simply means that untimely acts are not actionable.[10]
KELLY, J., concurred with CAVANAGH, J.

1 I disagree with the majority’s contention that these statements should be considered mere stray remarks. Moreover, I find wholly unpersuasive the majority’s logic that the derogatory statements concerning African-Americans are irrelevant because plaintiff is Indian.

 As noted previously, I tend to agree with the majority that plaintiff presented insufficient evidence that she was retaliated against for her alleged opposition to the sexual harassment of her coworkers. However, I disagree with the majority’s election to decide, in dictum, whether responsive physical behavior constitutes protected activity. Given the majority’s ultimate conclusion, this portion of the majority’s opinion is *294 unnecessary. Moreover, although this issue was raised by the Attorney General as amicus curiae, this issue was neither raised below nor specifically briefed by the parties.

3 Is not this “principle” a given? As I have noted previously, it would seem strange indeed for a “correctly decided” decision to he trashed.

 MCL 600.5827 provides:
Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

 See also Radtke v Everett, 442 Mich 368, 381-382; 501 NW2d 155 (1993) (“While this Court is not compelled to follow federal precedent or guidelines in interpreting Michigan law, this Court may, ‘as we have done in the past in discrimination cases, turn to federal precedent for guidance in reaching our decision.’ Sumner v Goodyear Tire & Rubber Co, 427 Mich 505, 525; 398 NW2d 368 (1986).”); Stevens v McLouth Steel Products Corp, 433 Mich 365, 375; 446 NW2d 95 (1989) (“This Court has frequently drawn from federal court precedent in interpreting other aspects of the Civil Rights Act. See, e.g., Sumner v Goodyear Tire & Rubber Co, 427 Mich 505, 525; 398 NW2d 368 (1986)....”).

 The majority posits that my conclusion to reaffirm the principles announced in Sumner stems from my preference to interpret the Civil Rights Act in harmony with my “own,” “self-stated” “characterization” of the purpose of the act. Ante at 285 n 11. As detailed in Sumner, supra at 525, the purpose of the act is “to root out discrimination and make injured parties whole.” In the same footnote, however, the majority acknowledges that Sumner’s stated purpose of the act is undeniable. Nonetheless, the majority concludes that this undeniable purpose must heed another “competing” purpose-“to ensure that relief under the act be subject to a statute of limitations.” Ante at 285 n 11. Accordingly, the majority would “fine-tune” the act’s undeniable purpose and restate the “precise” purpose of the Civil Rights Act as follows: to intermittently root out discrimination and make injured parties somewhat whole. I prefer the undeniable purpose previously articulated by this Court because it is more consistent with the Legislature’s intent. While the majority claims that the words of any statute can be undermined by considering the statute’s purpose, today’s decision demonstrates that the opposite proposition is equally true. Namely, a remedial statute can be tortured by a preference to ignore, not effectuate, the Legislature’s purpose in enacting the statute.

 “Nothing in these provisions permits a plaintiff to recover for injuries outside the limitations period when they are susceptible to being characterized as ‘continuing violations.’ To allow recovery for such claims is simply to extend the limitations period beyond that which was expressly established by the Legislature.” Ante at 282 (emphasis added). “An employee is not permitted to bring a lawsuit for employment acts that *303 accrue beyond this period, because the Legislature has determined that such claims should not be permitted.” Id. at 284-285 (emphasis added).

 “[W]e conclude that, once evidence of acts that occurred outside the statute of limitations period is removed from consideration, there was insufficient evidence of retaliation based on either plaintiffs alleged opposition to sexual harassment or her filing of a grievance ....” Ante at 266 (emphasis added). “We conclude that, absent evidence of these acts, there is insufficient evidence to establish a causal link between the 1987 grievance and any retaliatory acts occurring within the limitations period.” Id. at 278 (emphasis added).

 However, I must note that the Morgan Court held that the continuing violations doctrine still applies to hostile work environment claims. “We also hold that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile work environment takes place within the statutory time period.” Id. (emphasis added). Here, the majority does not attempt to exercise the same degree of prudence and reason. Rather, the majority simply concludes that ah claims brought under the Civil Rights Act, whether premised on discrete or nondiscrete acts, are subject to the statute of limitations.

 In light of the majority’s resolution of this case, I too do not reach the other issues raised on appeal or in plaintiffs cross-appeal.